CARAWAY, J.
 

 |¶The appellants appeal a partial summary judgment rendered in favor of the plaintiffs that found the defendant truck driver solely at fault for an accident that occurred when his logging truck attempted to make a left hand turn. The accident occurred on a crowded city street when logs extending from the truck struck plaintiffs’ vehicle. Appellants additionally request a new trial in order for consideration of a late-filed expert witness report. For the following reasons, we affirm the judgment of the trial court.
 

 Facts
 

 This suit arises out of an automobile accident which occurred in Bastrop, Louisiana. On March 9, 2007, 19-year-old Tiffany Pruitt was driving her father’s pickup truck eastbound in the center lane of travel on East Jefferson Avenue. The street is a one-way thoroughfare. Defendant, Glenn C. Nale, was also driving in an easterly direction on Jefferson Avenue in a specially designated left-turn lane. Nale, who was driving an 18-wheel Mack tractor trailer, was hauling a load of logs to the Bastrop paper mill for his employer, the defendant Sidney Stokes Timber d/b/a Sidney Stokes and Son, L.L.C. (“Sidney Stokes Timber”).
 

 The accident occurred when Nale attempted to make a left hand turn onto South Franklin Street.
 
 [1]
 
 As Nale began to turn from the left turning |2lane, the logs protruding from the rear of his trailer
 
 [2]
 
 entered Tiffany’s center lane of travel and impacted the truck that she was driving. At least one of the logs entered the driver’s side window, leaving Tiffany with severe injuries.
 

 On February 8, 2008, Tiffany Pruitt along with her parents (collectively “the Pruitts”) filed a petition for damages, naming as defendants Nale, as the driver of
 
 *782
 
 the log truck; Sidney Stokes Timber, Nale’s employer; Empire Indemnity Insurance Company, who had issued a policy of automobile liability insurance covering Sidney Stokes Timber and Nale, which was in effect at the time of the accident; and State Farm Automobile Insurance Company, plaintiffs’ uninsured/ under-insured insurance company.
 
 [3]
 
 The defendants filed answers asserting, among other things, the affirmative defense of comparative negligence or fault of the plaintiff.
 

 Thereafter, on November 12, 2008, the Pruitts filed a motion for summary judgment, seeking a judgment in their favor as to the issue of defendants’ liability. A hearing on the motion was held March 31, 2009 and a ruling was subsequently rendered in favor of plaintiffs on July 1, 2009. In ruling that Nale was 100% at fault, the court noted: It is from this judgment establishing liability that defendants have appealed.
 
 [4]
 

 The turning maneuver violated state law which required that Defendant Nale make sure before turning that he could safely turn. La. R.S. 32:104. Defendant Nale breached his duty to make the left turn safely and is liable to Plaintiffs. |sThe evidence showed that plaintiff Tiffany Pruitt could not fairly be said to have followed the truck too closely. After the light turned green she drove off at a normal speed, the truck right ahead of her turned and the logs came in front of her truck for just a second or two, but long enough for contact to be made. She was not at fault if she ran into the logs.
 

 On appeal, the defendants contend that the trial court erred in granting the motion for summary judgment on the issue of liability because there were material factual disputes as to whether defendants were negligent and whether Tiffany Pruitt was comparatively at fault. Additionally, defendants urge the granting of a new trial to consider an expert report submitted
 
 after
 
 the hearing on the motion for partial summary judgment. For the following reasons, we affirm the actions of the trial court.
 

 Discussion
 

 The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact.
 
 Duncan v. USAA Ins. Co.,
 
 06-363 (La.11/29/06), 950 So.2d 544;
 
 Morris v. Union Parish Police Jury,
 
 39,709 (La. App.2d Cir.5/11/05), 902 So.2d 1276. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action; the proceeding is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2);
 
 14 Duncan v. USAA Ins. Co., supra.
 
 The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
 

 
 *783
 
 The initial burden of proof remains •with the mover to show that no genuine issue of material fact exists. If the mover has made a prima facie showing that the motion should be granted, the burden shifts to the non-moving party to present evidence demonstrating that a material fact issue remains. The failure of the nonmov-ing party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 Hutchinson v. Knights of Columbus, Council No.
 
 5747, 03-1533 (La.2/20/04), 866 So.2d 228;
 
 Hardy v. Bowie,
 
 98-2821 (La.9/8/99), 744 So.2d 606.
 

 Appellate review of the grant or denial of a summary judgment is
 
 de novo.
 
 Thus, the court uses the same criteria as the trial court in determining whether summary judgment is appropriate-whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. A “genuine issue” is a “triable issue,” that is, an issue on which reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for trial on that issue. A fact is “material” when its existence or nonexistence may be essential to a plaintiffs cause of action under the applicable theory of recovery.
 
 Jones v. Estate of Santiago,
 
 03-1424 (La.4/14/04), 870 So.2d 1002.
 

 | ¿Ordinarily, the determination of whether negligence exists in a particular case is a question of fact; therefore, cases involving a question of negligence ordinarily are not appropriate for summary judgment.
 
 Freeman v. Teague,
 
 37, 932 (La. App.2d Cir.12/10/03), 862 So.2d 371;
 
 Powers v. Tony’s Auto Repair, Inc.
 
 98-1626 (La.App. 4th Cir.4/28/99), 733 So.2d 1215,
 
 writ denied,
 
 99-1552 (La.7/2/99), 747 So.2d 28. This principle extends to a question of comparative fault as well. However, where reasonable minds cannot differ, a question of comparative fault is a question of law that may be resolved by summary judgment.
 
 See Rance v. Harrison Co.,
 
 31,503 (La.App.2d Cir.1/20/99), 737 So.2d 806,
 
 writ denied,
 
 99-0778 (La.4/30/99), 743 So.2d 206.
 

 For the affirmative defense of comparative fault, the defendants have the burden of proof. A party asserting comparative fault bears the burden of proof by a preponderance of the evidence that the other party’s fault was a cause in fact of the damage complained of.
 
 Watson v. Brazeel,
 
 36,499 (La.App.2d Cir.12/18/02), 833 So.2d 1276,
 
 writ denied,
 
 03-0217 (La.4/4/03), 840 So.2d 1215;
 
 Begnaud v. Camel Contractors, Inc.,
 
 98-207 (La.App. 3d Cir.10/28/98), 721 So.2d 550,
 
 writ denied,
 
 98-2948 (La.2/5/99), 738 So.2d 1. Therefore, the Pruitts’ burden in this summary judgment setting did not require them to negate all essential elements of defendants’ affirmative defense of comparative fault, “but rather to point out to the court that there is an absence of factual support” for that defense. La. C.C.P. art. 966(C)(2).
 

 In the instant case, filings in support of plaintiffs’ motion for partial summary judgment on the issue of liability included the depositions of | (¡plaintiffs’ witnesses Dessa McMillian and Barbara Montgomery, along with the deposition of Bastrop Police Officer Della Wallis. Photographs of the accident, along with an accident diagram and accident report were also submitted. Additionally, affidavits of Des-sa McMillian and Plaintiff Tiffany Pruitt were presented.
 
 [5]
 

 
 *784
 
 Both McMillian and Montgomery were eyewitnesses to the accident. McMillian was a guest passenger in a vehicle driven by her mother in a northerly direction on Franklin Street. They were stopped at the red light for the intersection just before the accident occurred, and the collision occurred right in front of her. Montgomery was headed east on Jefferson Avenue, the same direction as Tiffany. Her car was in the lane next to Tiffany’s lane of travel and slightly behind Tiffany.
 

 Both eyewitnesses testified that Tiffany was stopped behind Nale’s log truck, in the middle lane, until the light turned green. At that point everyone proceeded forward at a normal rate of speed. McMillian further testified that Nale’s truck was straddling the left turn lane. When he began to execute the turn, the logs swung out into Tiffany’s middle lane of travel and went through her window. McMillian believed that the logs penetrated the driver’s side window because she noticed that the left side of Tiffany’s face had been struck. Montgomery’s deposition testimony revealed “that there was maybe one or two [cars] in front of her [Tiffany].” As the light turned green, all of the cars heading east on Jefferson Avenue began to |7proceed through the intersection. She then heard a “big pow” at which point glass flew into her truck and all of a sudden Tiffany’s truck swerved toward her.
 

 Officer Wallis, the investigating officer of the accident, inspected Tiffany’s truck and believed that “the logs hit the side of the door itself. Instead of like crashing right through the front.” Her belief was formed after noticing the steering wheel was pushed through the windshield from the inside of the truck. Additionally, one of the timber poles was broken and was left protruding out the right side of the truck’s trailer. As Nale completed the turn onto Franklin Street before stopping, the protruding pole struck the rear window of a third vehicle parked on the east side of Franklin street. Nale was ticketed for making an improper turn. Officer Wallis acknowledged that accidents of this nature were common at this particular intersection; however, she testified that she has witnessed trucks execute the turn correctly by utilizing the appropriate level of caution.
 

 In Nale’s deposition, he admits that he did not check his mirror for traffic in Tiffany’s lane of travel. When asked whether his truck was ever located solely in the left turn lane, he stated that it was. Nevertheless, he acknowledged that the collision occurred completely in Tiffany’s lane, but asserted that there is no way to make that particular turn without the logs veering into the middle lane of travel:
 

 Q: Okay. Thank you, sir. Okay. And it’s your contention that all this activity occurred in Tiffany’s lane of travel?
 

 A: Right. Because the logs — when I make that turn that log’s going to extend over into her lane.
 

 IsQ: Okay
 

 A: It don’t matter how far over to the left you are.
 

 Q: It don’t matter how far over to the left you are. They’re still going to go over as far — as long as they are A: Right
 

 Q: There’s no way that you could turn at that turn without those logs going into the other lane of travel.
 

 A: There’s no way.
 

 Nale further testified that the logs would not have been in Tiffany’s lane for very long, “wouldn’t be over a couple of sec
 
 *785
 
 onds.” His testimony also revealed that he never came to a complete stop before making the turn.
 
 [6]
 
 Moreover, Nale acknowledged that alternative routes were available such that the downtown intersection could have been avoided altogether.
 

 La. R.S. 32:104(A) provides:
 

 No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
 

 Under this statute, Nale was under a duty to refrain from making the left turn until such movement could “be made with reasonable safety.” Judicial interpretations of La. R.S. 32:104(A) have made it clear that a left-turning motorist has a strong duty of care.
 
 Bruce v. State Farm Ins. Co.,
 
 37,704 (La.App.2d Cir.10/29/03), 859 So.2d 296. The duty includes properly signaling an intention to turn left and keeping a proper lookout for both | incoming and overtaking traffic in order to ascertain that the left turn can be made with reasonable safety.
 
 Id,.; Agency Rent-A-Car, Inc. v. Hamm,
 
 401 So.2d 1259 (La.App. 1st Cir.1981).
 

 The jurisprudence has recognized that commercial truck drivers are required to undergo testing and licensure which involve attending a special school designed to teach the mechanics and attendant hazards of operating large rigs.
 
 Davis v. Witt,
 
 02-3102 (La.7/2/03), 851 So.2d 1119. Based upon that premise, our courts have recognized that a professional truck driver is a superior actor in the eyes of the law.
 
 Id.
 

 Conceding Nale’s negligence, the defendants’ main point of contention in this appeal is that genuine issues of material fact exist with regard to Tiffany’s contributing fault in causing the accident. Significantly, defendants do not deny that Tiffany’s vehicle remained in her lane which was in the center of the three lanes which intersected South Franklin Street. However, they argue that Nale’s truck was positioned throughout the turn maneuver so that it straddled both the center lane and the left turning lane. They assert that Tiffany’s negligence therefore resulted from her ramming the end of the extended logs since Nale’s truck had always remained partially in her lane. Defendants contend that there were multiple points of impact and that the original log went through Tiffany’s windshield, signaling a front-to-rear collision. This view of the accident according to the defendants raises issues of material fact.
 

 Initially, from the description of the intersection and Nale’s account of the requirements for this turn of his large truck, we agree with the | Tndefense that Nale was required to position the truck largely within the middle lane (Tiffany’s lane) in addition to the left turn lane in order to complete the turn. Nevertheless, from the evidence brought forth in support of plaintiffs’ motion for summary judgment, plaintiffs have shown that Nale’s truck was not positioned in Tiffany’s lane throughout the entire turning maneuver so as to constantly block her traffic lane.
 

 Plaintiffs demonstrated without dispute that both vehicles were moving at the time of the accident. Defendant did not show
 
 *786
 
 that the truck had suddenly stopped or was moving at a considerably slower speed than Tiffany’s vehicle at the time of the collision. Tiffany’s vehicle did not ram the logs and stop. McMillian and Nale describe a swinging of the logs from the left turn lane into Tiffany’s lane, and Nale admits that the swing of the logs would happen very briefly. This means that the furthest ends of the moving logs did not remain constantly in the center lane so as to block that lane and prevent Tiffany from proceeding forward in her lane alongside the back of the truck and then receiving a blow from the swinging logs. Finally, plaintiffs presented undisputed evidence of the eyewitness report of a side impact by the logs against Tiffany’s vehicle
 
 [7]
 
 and of Tiffany’s vehicle swerving to the right and continuing out of control for 331 feet. Officer Wallis’s investigation confirmed such impact which would tend to push the vehicle to the right.
 

 ln From review of the evidence presented in this summary judgment setting, we do not find that the defendants presented evidence regarding Tiffany’s contributory fault in the accident sufficient to establish that they will be able to satisfy their burden of proof at trial. We disagree that Tiffany violated the duty of not following another vehicle more closely than is reasonable. La. R.S. 32:81. The vehicles were in close proximity stopped on the courthouse square in Bastrop when they began to move slowly through the intersection. Tiffany stayed in her lane and moved close to the rear of the 18-wheeler when that end of the truck had moved into a separate lane, the left turn lane. The evidence does not present a material issue of fact indicating that Tiffany rear-ended the protruding logs on the truck. Nor does the evidence show that Nale positioned his truck within Tiffany’s lane continuously through the turn maneuver so as to prevent her from moving into the position where the accident occurred. Accordingly, the trial court’s granting of the motion for summary judgment on the issue of liability is affirmed.
 

 As a secondary issue, defendants claim the trial court erred in refusing to consider a report of an expert in accident reconstruction which they attempted to be presented by their motion for new trial/rehearing. The trial court found the motion untimely. The Pruitts’ motion for summary judgment had been filed in November 2008 and the hearing on the motion did not occur until March 2009, over a year after filing of the suit.
 

 La. C.C.P. art. 966(B) provides:
 

 The motion for summary judgment and supporting affidavits shall be served at least fifteen days before the time specified for the hearing. 112For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313
 
 at least eight dags
 
 prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary (emphasis added).
 

 In the recent case,
 
 Newsome v. Homer Memorial Medical Center,
 
 10-0564 (La.4/9/10), 32 So.3d 800, the Louisiana Supreme Court reversed a trial court’s grant of a continuance in order to allow the submission of plaintiffs expert affida
 
 *787
 
 vit in opposition to a motion for summary judgment. The court found that the continuance, filed just seven days prior to the date of a scheduled hearing, violated the “eighLday limit contained in Article 966(B).”
 

 In light of the
 
 Newsome
 
 ruling and the procedural circumstances of this case, we find no error in the trial court’s ruling.
 

 Conclusion
 

 For the foregoing reasons, we affirm the decision of the trial court granting plaintiffs’ motion for partial summary judgment on the issue of liability and further denying defendants’ motion for rehearing/new trial. All costs of this appeal are hereby assessed to the defendants/appellants.
 

 AFFIRMED.
 

 [1]
 

 . Both East Jefferson Avenue and South Franklin Street are one-way streets. East Jefferson Avenue runs eastbound; as it intersects with South Franklin Street there are three lanes of travel: a specially designated left turn lane and two eastbound travel lanes. Franklin Street runs north with two lanes of travel. These two streets intersect at the corner of the Morehouse Parish Courthouse. There are parking spaces west of the intersection in front of the Courthouse, so that the left turn lane does not extend for the entire block.
 

 [2]
 

 . The logs extended 19 feet from the rear of Nale’s trailer and a red flag was placed on the end of the load to signal the overhang. It is undisputed that this 19 foot extension was within the 20 foot extension allowed by law.
 
 See
 
 La. R.S. 32:382(B)(1).
 

 [3]
 

 . State farm was dismissed by joint motion, without prejudice, November 6, 2008.
 

 [4]
 

 . Writs were initially denied by this court on July 21, 2009, on the ground that the July 1, 2009 ruling was in the form of reasons for judgment and thus not subject to immediate appeal until a partial final judgment had been executed. The Louisiana Supreme Court thereafter denied writs on September 23, 2009. The initial lack of final judgment designation pursuant to La. C.C.P. art. 1915(B) was cured by a judgment rendered by the trial court on October 6, 2009, which designated the partial summary judgment as final. On December 3, 2009, the trial court denied defendant’s motion for rehearing/new trial and thereby refused the filing of any late evidence, including an expert report.
 

 [5]
 

 . Tiffany Pruitt was struck in the head during the accident and rendered unconscious. She has no memory of the collision. Her affidavit simply reveals that at all times her vehicle remained entirely within its lane of travel and
 
 *784
 
 further that she obeyed all traffic laws and ordinances.
 

 [6]
 

 . While this conflicts with the testimony of plaintiffs' witnesses, the conflict is not essential to the determination of liability for all testimony consistently revealed that both the log truck and Tiffany's truck were moving when the impact occurred.
 

 [7]
 

 . Copies of certain photos of the damage to Tiffany’s vehicle are in the record, but are unclear. These unclear photos do not place into conflict Officer Wallis’s conclusion regarding the side impact.