GASKINS, J.
 

 hMary Beth Laird filed petitions to partition undivided community property, al
 
 *1175
 
 leging that her former husband, John Carlton Laird, concealed his interest in a business known as Chapel Hill, LLC, and that the business and a contingency fee in a tort lawsuit were omitted from an earlier partition of the community. Mr. Laird filed an exception of
 
 res judicata
 
 and a motion for summary judgment, seeking dismissal of her petitions to partition these items. The trial court overruled the exception of
 
 res judicata.
 
 Finding genuine issues of material fact as to the contingency fee, the trial court denied summary judgment on that matter. As to Chapel Hill, LLC, the trial court found that Mr. Laird did not own an interest in it at the time the community terminated; accordingly, summary judgment was granted on that issue. Mrs. Laird appealed the granting of summary judgment on the ownership of Chapel Hill, LLC. Mr. Laird answered the appeal, contesting the overruling of his exception and the denial of summary judgment on the contingency fee.
 

 We reverse the trial court judgment granting partial summary judgment as to Chapel Hill, LLC. Because the matters raised in the answer to the appeal involve nonappealable interlocutory judgments, we dismiss the answer to the appeal.
 

 FACTS
 

 The parties were married in 1981 and had four children, all of whom are now adults. On February 17, 2006, the wife filed for divorce. Following a hearing officer conference (HOC) on May 5, 2006, the parties entered into a joint stipulation in which they partitioned the community. J_¿The document stated that the husband would receive all other community assets not specifically allocated to the wife. No specific mention was made in the partition documents of Chapel Hill, LLC, or a contingency fee. The parties agreed to prepare and execute a partition agreement and judgment within 10 days of the date of the stipulation. On May 8, 2006, the trial court signed a consent judgment implementing the joint stipulation.
 

 The parties were divorced in September 2006. In late September and early October 2006, the parties executed a detailed community property settlement, which included division of interests in several LLCs. In relevant parts, this document provided:
 

 The parties further agree that they have hereby accomplished the complete' partition of the community of acquets and gains formerly existing between them. It is the intention of the parties that henceforth there shall be, as between them, such rights and obligations as are specifically provided for in this agreement, and that the parties acknowledge that the allocations made to each of them has resulted in each party’s receiving an equal share of the community property.
 

 Both parties, JOHN CARLTON LAIRD and MARY BETH LAIRD, nee WALLEY, declare that they have made a full disclosure of all assets and debts of which the community of acquets and gains consists at the time the suit for divorce herein was filed. Should either party have failed to disclose an asset, said asset shall remain an item of community property subject to future partition between the parties.
 

 The parties hereby acknowledge that this agreement constitutes a legally enforceable contract. Both parties further acknowledge that this agreement shall be construed and governed in accordance with the laws of the State of Louisiana and any legal action necessary
 
 *1176
 
 to enforce the terms hereof shall be brought in the Fourth Judicial District Court, Ouachita Parish, Louisiana.... [Emphasis added.]
 

 |3On January 17, 2007, the wife filed an ancillary petition for partition of yet undivided community property in which she asserted a belief that the husband had failed to disclose a community property asset. She alleged that she had become aware that the husband may have had an interest in Chapel Hill, LLC, at the time the divorce suit was filed. According to documents filed with the Louisiana Secretary of State on February 10, 2006, the husband was a member and an organizer of this entity. In a deposition in April 2006, the husband had denied having any other “investment vehicles” other than the ones already known to the wife.
 

 On June 14, 2007, the wife filed an amended and supplemental ancillary petition for partition of yet undivided community property. She alleged that she had become aware of a contingency fee owed to her husband, an attorney, in the case of
 
 Kemp v. Kansas City Southern Railway.
 
 He had denied any contingent work in his April 2006 deposition; in a June 2007 deposition, he admitted that his portion of this contingency fee would be $140,000 to $160,000. In a second amended and supplemental ancillary petition for partition of yet undivided community property filed on July 29, 2008, the wife further alleged that deposition testimony of an accountant indicated that the husband’s law partner was holding certain property for him and that financial records established that the husband had an interest in Chapel Hill, LLC. Additionally, the deposition testimony of the husband’s law partner demonstrated that the husband’s gross portion of the
 
 Kemp
 
 contingency fee was $168,117.19.
 

 |4On August 26, 2010, the husband answered the ancillary petitions. He contended that he formed the Chapel Hill, LLC, entity for his law partner while the partner was vacationing out of the country and that any interest he had in the company was transferred to his law partner’s entity after he returned on February 13, 2006; therefore, he owned no interest in it when the wife filed her divorce petition. The husband alleged that at various points he was told he could or could not participate in the entity. He admitted that he was allowed to become a member of Chapel Hill, LLC, in the summer of 2006, at which time he received his only distribution from the company that year. He asserted that he answered truthfully in his depositions. As to the contingency fee, he alleged that he believed that it was of little to no value at the time of his deposition. At any rate, the husband alleged that it was only relevant to the valuation given by the parties to his professional law corporation, Dollar Laird, LLP.
 

 On August 26, 2010, an HOC was held as to the two items allegedly omitted from the community property settlement. As to the
 
 Kemp
 
 contingency fee, the hearing officer concluded that it was an asset at the time of the termination of the community on February 17, 2006, and had to be valued and partitioned.
 
 [1]
 
 After considering three different approaches, the hearing officer utilized one by which she concluded that the community’s interest in the settlement was 82 percent, or $136,175; thus, the wife’s share |fiwould be $68,088.
 
 [2]
 
 As to
 
 *1177
 
 the husband’s alleged interest in Chapel Hill, LLC, a limited liability corporation which was intended to be a vehicle for hurricane levee restoration contracts, the hearing officer found the husband’s account of his transfer of ownership interest in this company was not credible. (She also noted that in 2009, Chapel Hill, LLC, landed a $64.9 million contract with the U.S. Army Corps of Engineers.) Finding that the February 14, 2006, transfer of the community’s 8.B percent interest to another entity was a “sham,” the hearing officer concluded that the husband’s interest in Chapel Hill, LLC, was community property. Because the parties were unable to assign a value to this asset, the hearing officer ordered that discovery on this issue continue.
 

 On September 15, 2010, the husband filed an objection to the hearing officer’s findings as to these two issues. On that same date, the wife filed an objection to the HOC report only insofar as to the hearing officer stating her recollection that there was some mention of Chapel Hill, LLC, during the May 2006 HOC.
 

 On October 29, 2010, the husband filed an exception of
 
 res judicata
 
 asserting that the issues of partitioning the contingency fee and Chapel Hill, LLC, had previously been addressed in the May 2006 joint stipulation and consent judgment.
 

 On November 3, 2010, the husband also filed a motion for summary judgment, seeking dismissal of the wife’s petitions to partition yet | (¡undivided community property. Among other things, he alleged that the contingency fee in the
 
 Kemp
 
 suit involved Dollar Laird, LLP, not the husband individually or his personal law corporation. He also alleged that he did not possess an ownership interest in Chapel Hill, LLC, at the time the community terminated on February 17, 2006, and that he was transferred such an interest in June 2006 as his separate property. On December 9, 2010, the wife filed an answer and opposition to the husband’s exception and motion.
 

 A hearing was held on December 22, 2010. The trial court overruled the exception of
 
 res judicata.
 
 As to the motion for summary judgment, the trial court denied it as to the contingency fee, finding that there were genuine issues of material fact. However, the court granted summary judgment as to the alleged ownership interest in Chapel Hill, LLC, finding that it was not concealed, having been mentioned before the hearing officer in May 2006, that there was nothing to show it had any value at that time, and that there were no genuine issues of material fact as to ownership of the company by the community at the time of termination. Judgment was signed January 20, 2011.
 

 The -wife appealed the trial court’s granting of summary judgment as to Chapel Hill, LLC; the trial court certified this partial final judgment as suitable for immediate appeal. This court directed the trial court to issue a
 
 per curiam
 
 to explain the reasons for this certification since the judgment decided only one of the two pending community property claims while the second claim remained unadjudicated. In its
 
 per curiam,
 
 the trial court |7stated that it granted certification as a matter of judicial economy. In so certifying the issue for appeal, the trial court explained, it desired this court to let the parties know if the lower court ruling was final or if the Chapel Hill matter would have to be tried. By order, this court found no error in the trial court’s determination that this partial final judgment was suitable for immediate appeal; the appeal was allowed to continue.
 

 
 *1178
 
 On March 11, 2011, the husband answered the appeal, complaining of the trial court’s overruling of his exception of
 
 res judicata
 
 and its denial of summary judgment as to the contingency fee.
 

 MOTION FOR SUMMARY JUDGMENT
 

 Law
 

 The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact.
 
 Duncan v. USAA Insurance Company,
 
 2006-863 (La.11/29/06), 950 So.2d 544;
 
 Pruitt v. Nale,
 
 45,483 (La.App.2d Cir.8/11/10), 46 So.3d 780. Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Duncan, supra.
 
 Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action. The proceeding is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to ^material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
 

 The initial burden of proof remains with the mover to show that a genuine issue of material fact exists. If the mover has made a
 
 prima facie
 
 showing that the motion should be granted, the burden shifts to the nonmoving party to present evidence demonstrating that a material fact issue remains. The failure of the nonmov-ing party to produce evidence of a material factual dispute mandates the granting of the motion.
 
 Pruitt, supra; Upchurch v. State, ex rel. Louisiana Department of Transportation,
 
 45,761 (La.App.2d Cir.1/5/11), 57 So.3d 361.
 

 On a motion for summary judgment, the district court cannot make credibility determinations or weigh conflicting evidence. In deciding a motion for summary judgment, the district court must assume that all affiants are credible.
 
 Brooks v. Minnieweather,
 
 44,624 (La.App.2d Cir.8/19/09), 16 So.3d 1244. The credibility of a witness is a question of fact.
 
 Davis v. Delta Bank,
 
 42,529 (La.App.2d Cir.11/7/07), 968 So.2d 1254,
 
 writ not considered,
 
 2007-2473 (La.2/22/08), 976 So.2d 1276.
 

 Discussion
 

 The wife contends that the trial court erred in granting partial summary judgment in favor of the husband as to the ownership of Chapel Hill, LLC.
 

 The retroactive date of termination of the community between the parties was February 17, 2006, the date the wife filed suit for divorce. Several days before, on February 10, 2006, the husband prepared and filed |flthe documents with the Louisiana Secretary of State to organize Chapel Hill, LLC, at the behest of his law partner, Johnny Dollar; Mr. Dollar was out of the country. The husband was listed as an organizer and a member of the company. On February 14, 2006, after the husband informed Mr. Dollar of his marital woes, documents were executed transferring his interest in the company to Eagle Point Properties South, LLC, a company owned by Mr. Dollar. According to the affidavits and deposition testimony of the husband and Mr. Dollar, the interest was transferred because Mr. Dollar did not wish to risk entangling his Chapel Hill investors in
 
 *1179
 
 the husband’s possible domestic litigation. The men testified that in June 2006, the interest in Chapel Hill was returned to the husband; however, no documents were prepared to that effect. The husband received distributions in excess of $54,000 from Chapel Hill in the summer of 2006.
 

 However, the accountants for Chapel Hill, Ben Hulsey and Amy Hale, both made notations at a meeting in March 2006, that indicated that the husband’s interest in Chapel Hill, LLC, was being held for the husband by Mr. Dollar.
 
 [3]
 

 The husband argues that the evidence shows that he was divested of his interest in Chapel Hill, LLC, before his wife filed for divorce on | mFebruary 17, 2006; thus, his interest cannot be considered community property. Furthermore, the interest was returned to him after the termination of the community and should be considered his separate property. However, given the additional evidence indicating that the husband’s interest was being “held” for him and the lack of documents transferring the interest back to him, we find that a credibility call must be made in determining whether the husband had an ownership interest in Chapel Hill, LLC, at the termination of the community.
 

 After carefully considering the evidence, we find that there are genuine issues of material fact which make summary judgment inappropriate as to the ownership of Chapel Hill, LLC. Accordingly, we reverse the trial court judgment insofar as it granted partial summary judgment in favor of Mr. Laird on this matter.
 

 ANSWER TO APPEAL
 

 A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. La. C.C.P. art. 1841. An interlocutory judgment is appealable only when expressly provided by law. La. C.C.P. art. 2083(C). The denial of a motion for summary judgment is an interlocutory judgment and is not appealable. La. C.C.P. arts. 968, 1841;
 
 Fontenot v. Miss Cathie’s Plantation, Inc.,
 
 93-926, 93-927 (La.App. 3rd Cir.3/2/94), 634 So.2d 1380. Although La. C.C.P. art. 1915(B) allows a trial court to designate a partial summary judgment as a final judgment, it does not provide that a judgment denying a motion for Insummary judgment can be so designated.
 
 Young v. City of Plaquemine,
 
 2004-2305 (La.App. 1st Cir.11/4/05), 927 So.2d 408.
 

 A judgment overruling the peremptory exception of
 
 res judicata
 
 is interlocutory and is not appealable.
 
 Tugler v. James Machine Works, Inc.,
 
 41,704 (La.App.2d Cir.1/24/07), 948 So.2d 1157. Also, La. C.C.P. art. 1915 does not authorize a
 
 *1180
 
 trial court to designate a judgment denying an exception as final.
 
 Young v. City of Plaquemine, supra.
 

 Because both of the judgments complained of by the appellee are interlocutory, neither is separately appealable. Furthermore, we conclude that neither is the proper subject of an answer to an appeal under La. C.C.P. art. 2133. Finally, considering that our judgment reverses the only relief granted on the merits, we decline to exercise our supervisory jurisdiction to address the interlocutory judgments. Accordingly, the answer to the appeal is hereby dismissed.
 
 [4]
 

 CONCLUSION
 

 The judgment of the trial court granting partial summary judgment as to Chapel Hill, LLC, is reversed. The answer to the appeal is dismissed. Costs are assessed to John Laird.
 

 JUDGMENT GRANTING PARTIAL SUMMARY JUDGMENT REVERSED; ANSWER TO APPEAL DISMISSED.
 

 [1]
 

 . The husband’s percentage was .0125 of the $37,500,000
 
 Kemp
 
 settlement or $168,117.19. The case involved a car/train wreck.
 

 [2]
 

 . In making this determination, the hearing officer used a “rough adaptation” of the
 
 Sims
 
 formula. See
 
 Sims v. Sims,
 
 358 So.2d 919 (La. 1978). She concluded that the husband worked on the case for 56 months, 46 of which were during the existence of the community.
 

 [3]
 

 . In their notes, the accountants recited the percentages of ownership held in Chapel Hill, LLC, by various parties. Mr. Hulsey wrote in his notes: "8.3 EAGLE POINT -» JED (NOMINEE FOR JACK).” In his deposition, Mr. Hulsey verified that by "Jack,” he was referring to Mr. Laird and indicated that Mr. Dollar was holding the interest for Mr. Laird. In her notes, Ms. Hale gave the ownership percentages and names of owners; last on the list was: "[B]alance [of ownership interest] Eagle Point Prop (JED holding for Jack).” In her deposition, Ms. Hale testified that she understood "Jack” to be Mr. Laird. Both accountants testified in their depositions that Ms. Hale's notes would be more reflective of the exact words spoken by Mr. Dollar; Mr. Hulsey said his notes reflected his "common sense understanding” of what Mr. Dollar told them.
 

 In his affidavit, Mr. Dollar stated that the accountants must have misinterpreted what he said at the meeting.
 

 [4]
 

 . Should the husband develop additional facts supporting his motion and exception, he can raise them again at the trial court level and also on appeal after a determination on the merits.