STONE, J.
The plaintiffs, Danny C. Weaver, Delores Weaver Winderweedle, Terri Weaver Escude, Linda Kay Weaver Pharr, and Rebecca Weaver Martin, appeal from the trial court's judgment denying their motion for partial summary judgment and granting the motion for summary judgment in favor of the defendants, Caddo Parish Sheriff Steve Prator and Deputy Sheriff Earlton Parker. For the following reasons, we reverse that portion of the trial court's judgment granting the defendants' motion for summary judgment and remand the case for further proceedings.
*1081 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On December 18, 2014, the Caddo Parish Sheriff's Department ("Sheriff's Department") and the Shreveport Police Department ("SPD") attempted to arrest Damien Pea ("Pea") on various outstanding warrants issued by the State of Oklahoma. The operation was conducted by members of the joint task force known as the Street Level Interdiction Unit ("SLIU"). The SLIU is a unit of the Caddo-Shreveport Narcotics Unit, and consists of both SPD Officers and Sheriff Deputies.[1]
In order to execute the arrest of Pea, the SLIU enlisted the assistance of Teketia Pipkins ("Pipkins"), Pea's girlfriend. Pipkins was instructed to drive Pea to the Circle K gas station on West 70th Street and exit her vehicle. Although there is a dispute regarding whether Pipkins was also instructed to take the keys from the vehicle when she exited, Pipkins did not remove the keys when she exited the vehicle.
On the day of the operation, Caddo Parish Sheriff Deputy Earlton Parker ("Deputy Parker") was on duty and assigned to the SLIU. Deputy Parker, the only Caddo Sheriff Deputy participating in the arrest of Pea, rode as a passenger in the lead vehicle being driven by SPD Officer Ryan Holley ("Officer Holley").
Once Pipkins arrived at the Circle K gas station with Pea and exited the vehicle, agents with the SLIU approached the vehicle from the rear. Deputy Parker also exited Officer Holley's vehicle. At the same time, Pea moved from the passenger seat to the driver's seat and turned on the vehicle's ignition. Since the agents with SLIU failed to block and/or barricade the vehicle, Pea drove away from the Circle K gas station, and a high-speed chase of Pea commenced.
The pursuit lasted over 11 minutes and extended through several residential and commercial neighborhoods at night, in the rain, and at speeds in excess of 90 miles per hour. During the pursuit on Jewella Avenue, Pea's vehicle struck a civilian vehicle causing Pea to have a flat tire and cross the median on Jewella Avenue. Pea continued to drive against the flow of traffic when he struck, head on, a vehicle occupied by Obie and Linda Weaver ("the Weavers"). As a result of the injuries they sustained from the impact of the crash, the Weavers both tragically died days later, and Pea was pronounced dead on the scene.
On December 3, 2015, the Weavers' children, Danny C. Weaver, Delores Weaver Winderweedle, Terri Weaver Escude, Linda Kay Weaver Pharr, and Rebecca Weaver Martin ("Plaintiffs"), filed suit against the City, Sergeant Larry J. Scott ("Sergeant Scott"), Sergeant Jeff Peters ("Sergeant Peters"), Caddo Parish Sheriff Steve Prator ("Sheriff "), Deputy Sheriff Earlton Parker ("Deputy Parker"), and Deputy Sheriff Joel Davidson ("Deputy Davidson"), in their individual capacities, for damages resulting from the Weavers' death.
On December 21, 2015, the Plaintiffs filed a first amending petition adding SPD Officer Joel Davidson ("Officer Davidson") as a defendant, and alleging *1082 the vicarious liability of the City for the actions of Officer Davidson. On November 30, 2016, the Plaintiffs filed a second amending petition adding Pipkins, American Alternative Insurance Company, and Columbia Casualty Company as defendants. On February 16, 2017, the Plaintiffs filed a third amending petition alleging that the City is both vicariously liable, as well as joint and solidarily liable for the actions of any employees, representatives, agents, and volunteers of the Sheriff and Pipkins.
On October 2, 2017, the Sheriff and Deputy Parker filed a motion for summary judgment arguing that they were entitled to dismissal of all claims against them because: (1) there was no negligence on the part of Deputy Parker because he had no part in planning the arrest or pursuit; (2) the Sheriff was not vicariously liable for Deputy Parker's actions because there was no evidence of negligence on the part of Deputy Parker; (3) the Sheriff was not vicariously liable for the alleged negligence of Pipkins; and (4) even accepting that the Caddo-Shreveport Narcotics unit was a "joint venture," the Sheriff was not vicariously or solidarily liable for the alleged fault of Shreveport Police Officers for activities occurring outside the mission of the Caddo-Shreveport Narcotics Unit.
The plaintiffs filed a cross-motion for partial summary judgment in which they asserted that there is no genuine issue of material fact that the attempted arrest of Pea and resulting pursuit was a joint operation between the City and Sheriff, and the plaintiffs were entitled to judgment as a matter of law finding the City and Sheriff solidarily liable for the Weavers' deaths. The trial court denied the plaintiffs' cross-motion for partial summary judgment, and granted the Sheriff and Deputy Parker's motion for summary judgment based on the court's findings that: there is no genuine issue of fact that Deputy Parker was not at fault in the operation to arrest Pea; and, there is no genuine issue of fact that Caddo Parish Sheriff Steve Prator is not vicariously liable. The plaintiffs now appeal.
DISCUSSION
The plaintiffs contend that the trial court erred in granting summary judgment in favor of the Sheriff and Deputy Parker and denying their motion for partial summary judgment.
Appellate courts review a judgment granting a motion for summary judgment on a de novo basis, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Bank of New York Mellon v. Smith , 2015-0530 (La. 10/14/15), 180 So.3d 1238, 1243 ; Tramuta v. Lakeside Plaza, L.L.C ., 14-410 (La. App. 5 Cir. 2/25/15), 168 So.3d 775, 778 ; Gutierrez v. State Farm Fire & Cas. Ins. Co. , 13-341 (La. App. 5 Cir. 10/30/13), 128 So.3d 509, 511. In conducting our de novo review, we consider all reasonable inferences to be drawn from the record in the light most favorable to the non-movant. Hines v. Garrett, 04-0806 (La. 6/25/04), 876 So.2d 764.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau , 2007-1726 (La. 2/26/08), 977 So.2d 880 ; Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC , 49,375 (La. App. 2 Cir. 10/1/14), 150 So.3d 492, writ denied , 2014-2304 (La. 1/23/15), 159 So.3d 1058.
A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of summary judgment, *1083 show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially ensure or preclude recovery, affect a litigant's ultimate success or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc. , 93-2512 (La. 7/5/94), 639 So.2d 730 ; Estate of Levitz v. Broadway , 37,246 (La. App. 2 Cir. 5/14/03), 847 So.2d 170.
La. C.C.P. art. 966(D)(1) provides the general rule concerning the burden of proof for summary judgment and states in pertinent part as follows:
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
When the motion for summary judgment is made and supported as provided in La. C.C.P. art. 966, the adverse party "may not rest on the mere allegations or denials of his pleading," but his response, by affidavits or other proper summary judgment evidence, "must set forth specific facts showing that there is a genuine issue for trial." If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The duty-risk analysis is used to determine whether liability exists under the facts of a particular case. Stroik v. Ponseti , 96-2897 (La. 9/9/97), 699 So.2d 1072 ; Courville on Behalf of Vincent v. City of Lake Charles , 98-73 (La. App. 3 Cir. 10/28/98), 720 So.2d 789, 795. Under a duty-risk analysis, a plaintiff must prove that (1) the conduct in question was the cause-in-fact of the harm, (2) the defendant owed a duty of care to the plaintiff, (3) the defendant breached the requisite duty, and (4) the risk of harm was within the scope of protection afforded by the duty. Stroik, supra . In order for a plaintiff to recover under a negligence theory, all four inquiries must be answered affirmatively. Id.
The plaintiffs first assert that the trial court erred in its summary judgment rulings because a genuine issue of material fact exists as to whether the attempted arrest and resulting pursuit of Pea was pursuant to a joint operation between the City and the Sheriff. We restrict our analysis singularly to the granting of the defendants' motion for summary judgment.
The denial of a motion for summary judgment is an interlocutory judgment and is not appealable. La. C.C.P. arts. 968, 1841 ; Laird v. Laird , 46,459 (La. App. 2 Cir. 6/22/11), 69 So.3d 1173 ; Fontenot v. MissCathie's Plantation, Inc. , 93-926, 93-927 (La. App. 3 Cir. 03/02/94), 634 So.2d 1380. Although La. C.C.P. art. 1915(B) allows a trial court to designate a partial summary judgment as a final judgment, it does not provide that a judgment denying a motion for summary judgment can be so designated. Laird, supra ; Young v. City of Plaquemine , 04-2305 (La. App. 1 Cir. 11/4/05), 927 So.2d 408. Because the trial court denied the plaintiffs' motion for partial summary judgment, in which the *1084 existence of a joint operation was alleged to be a "genuine issue of material fact," review does not lie from this ruling. Therefore, we pretermit a discussion of the plaintiffs' argument related thereto.[2]
The primary issue before this Court is whether the trial court erred in granting summary judgment in favor of the defendants, based upon its finding that Deputy Parker was not negligent in the planning and the execution of the attempted arrest of Pea, and/or negligent in the resulting pursuit of Pea. The plaintiffs further assert that the alleged negligent acts and omissions of the SLIU members should determine liability for both the Sheriff and Deputy Parker. The plaintiffs assert that Deputy Parker had an obligation to ensure that the operation was thoroughly and safely planned and executed, that he was aware of the operation, and that he understood his role in the operation.
In contrast, the defendants argue that Deputy Parker had no such obligations because the extent of his involvement in the operation was limited to simply exiting the vehicle upon arrival at the Circle K gas station. In support of their arguments, both the plaintiffs and defendants have submitted the deposition of Deputy Parker.
In his deposition, Deputy Parker stated that he has been a member of the SLIU since 2011. Further, Parker's deposition testimony contended that he did not participate in the planning of the operation, nor was he aware of the manner in which the operation would be conducted. Deputy Parker alleges only that he learned of the operation from Officer Holley while en route to the Circle K to execute the arrest of Pea.
During the operation, Deputy Parker indicated that he exited the passenger side of the unmarked police vehicle being driven by Officer Holley and approached Pea's vehicle from the rear. He further explained that once Pea's vehicle left the Circle K, he resumed his position as a passenger while Officer Holley drove the unmarked vehicle in pursuit of Pea.
The unmarked vehicle driven by Officer Holley was not initially the lead vehicle pursuing Pea. However, Deputy Parker stated in his deposition that he used the police radio to inform the agents occupying the lead vehicle that he and Officer Holley could take the lead because their vehicle was equipped with lights and sirens. He also mentioned that neither he nor Officer Holley discussed a plan for apprehending Pea or terminating the chase. Deputy Parker claimed that he remained quiet for a large part of the pursuit, and only spoke to Officer Holley when their vehicle approached intersections.
A de novo review of the record reveals the SPD and Sheriff's Department fully engaged in the operation to arrest Pea, regardless of the fact that the only deputy sheriff present during the operation was Deputy Parker. As such, we find the actions of all members of the SLIU who were present and participated in the operation to arrest Pea may be considered by the trial court inasmuch as these facts are disputed.
We disagree with the characterization of Deputy Parker's limited involvement in the operation to arrest Pea. Deputy Parker had been a member of the SLIU since 2011, and in fact, the SLIU was his sole *1085 assignment at the time of the operation to arrest Pea. Although it is undisputed that he exited the vehicle and immediately returned once the pursuit of Pea ensued, Deputy Parker still participated. He unequivocally admitted in his deposition that he was in fact a participant in the operation, and that he used the police radio to inform the agents occupying the lead vehicle that he and Officer Holley could take the lead because their vehicle was equipped with lights and sirens. Therefore, having reviewed Deputy Parker's deposition testimony under the summary judgment standard of review, we reject the defendants' argument of Deputy Parker's limited involvement in the operation as a basis to absolve any liability for the Sheriff or Deputy Parker.
In conclusion, we find the trial court erred in granting summary judgment in favor of the defendants, as genuine issues of material fact exist as to whether Deputy Parker was negligent in the planning and the execution of the attempted arrest of Pea and/or negligent in the resulting pursuit of Pea, and whether there exists vicarious liability on the part of the Sheriff for the activities of Deputy Parker.
CONCLUSION
For the foregoing reasons, the trial court's judgment granting summary judgment in favor of the appellees, Sheriff Steve Prator and Deputy Sheriff Earlton Parker, is reversed. This matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed to the appellees, Sheriff Steve Prator and Deputy Sheriff Earlton Parker.
REVERSED AND REMANDED.

The Caddo-Shreveport Narcotics Unit was created by a Cooperative Endeavor Agreement which established the agency relationship between the City of Shreveport ("City") and the Sheriff's Department. The Cooperative Endeavor Agreement provides for the sharing of the proceeds from narcotics seizures and seizures of vehicles involved in narcotics activity. However, the SLIU occasionally conducts non-narcotics related operations.

We do not conclude, at this juncture, that potential issues concerning joint venture(s) and/or joint operation(s) may not be fully considered, if deemed admissible, by the trial court.