GARRETT, J.
|,The plaintiff, Donald Johnson, appeals from a summary judgment in favor of one of the defendants, Symetra Life Insurance Company, f/k/a Safeco Life Insurance Company.[1] Mr. Johnson filed suit seeking a declaratory judgment against the company, claiming that it failed to fulfill its obligation under an annuity contract which was entered into pursuant to a settlement agreement arising out of a 1991 personal injury claim. We affirm the trial court ruling granting summary judgment in favor of Symetra. We also affirm a trial court judgment granting an exception of no cause of action in favor of another defendant, Symetra Assigned Benefits Service Company, which dismissed the plaintiffs claims against that entity with prejudice.
FACTS
In 1991, Mr. Johnson, who was single, was injured in an auto accident in Franklin Parish. He filed suit there on June 10, 1992, against the other driver, Clarence Williams, Jr.; Williams’ employer, American Waste and Pollution Control Company, d/b/a Waste Management of Northeast Louisiana; and the employer’s insurer, Continental Casualty Company. In 1998, Mr. Johnson’s claims were dismissed with prejudice pursuant to a settlement agreement, which provided for a portion of the settlement to be paid in a series of disbursements over a 20-year period. After an initial cash payment of $300,000, he was to receive the following: $7,500 on August 15, 1997; $10,000 on August 15, 2001; $20,000 on August 15, 2005; $35,000 on August 15, 2009; and $50,000 on August 15, 2013. The |2agreement authorized the defendants to purchase an annuity from Safeco Life Insurance Company. It also provided that Mr. Johnson had no right to sell, mortgage, encumber or anticipate the periodic payments, or parts thereof, by assignment or otherwise.
Before the suit was settled and dismissed, Mr, Johnson married Therese Pal-ermino in 1992, and they moved to Maryland. The settlement documents reflected that Mr. Johnson was a Maryland resident and the annuity application listed his wife as a beneficiary. One child was born of this marriage in July 1994. After Mr. Johnson and his wife separated in August 1996, he returned to Louisiana.[2] Mr. Johnson’s wife and son remained in Maryland, where she initiated divorce proceedings in December 1996. In July 1997, she was awarded sole custody of the child and obtained a judgment ordering Mr. Johnson to pay child support of $663 per month. Review of the Maryland court documents shows that Mr. Johnson was served with the divorce proceedings and that he retained Maryland counsel to represent him after child support was set.[3] His attor- *883 nejfs efforts, to seek modification of the child support order were unsuccessful.
By his own admission, Mr. Johnson never paid any monthly child support. Consequently, his child’s mother was required to resort to the Maryland courts to enforce compliance with his support obligation to his |sson. As the annuity payments came due, she moved for and obtained orders from the Maryland court requiring disbursal of the payments directly to her by the annuity company to satisfy Mr. Johnson’s child support arrearages.
In August 1997, the wife received $5,304 in arrearages after she obtained a court order directing Safeco to deduct that sum from the $7,500 annuity payment and deposit it into the registry of the court. Due to Mr. Johnson’s ongoing failure to pay child support, for which he had already been held in contempt of court, his wife sought a temporary restraining order (TRO) in October 1997. The TRO was granted; it ordered Mr. Johnson not to sell, transfer, borrow against, or otherwise dissipate the Safeco annuity and directed Safeco not to transfer, relinquish, make any payments on, or make any distributions from the annuity pending further order of the court. On' November 10, 1997, following a hearing, the Maryland court issued a “Final Injunction” which stated the following: Mr. Johnson had failed to pay his monthly child support obligation of $663; he had been held in contempt for this failure; his wife had “successfully attached [his] annuity to secure payment of child support”; and he had threatened to liquidate the annuity and change his name and social security number to avoid paying child support. Mr. Johnson was ordered not to sell, transfer, borrow against or otherwise dissipate the annuity pending the court’s further order; however, the order provided that he could move to modify or dissolve the injunction. Safeco was ordered not to transfer, relinquish, make any payments on, or make any distributions from the annuity pending further order of the court. Attorney fees were awarded to l4the wife. Pursuant to Maryland law, the injunction was deemed binding upon service on Mr. Johnson’s counsel. Counsel for the wife certified service by mail of the final injunction on Mr. Johnson’s counsel and Safeco. Subsequently, on November 19, 1997, Mr. Johnson’s counsel was allowed to withdraw. Mr. Johnson was notified of his lawyer’s withdrawal. Judgment granting a divorce was rendered in December 1997, .and the prior provisions for custody and child support were incorporated by reference. At this time, Mr. Johnson’s former wife resumed use of her maiden name.
Thereafter, pursuant to the orders of the Maryland court, Ms. Palermino was able to secure payments of Mr. Johnson’s substantial child support arrearages every four years when an annuity payment to him became payable. In 2001, she received $10,000, at a time when she was owed. $32,487 in child support. In 2005, she was paid $20,000 when the arrearage owed was $37,162.32. In 2009, she was paid $35,000 when the arrearage was $55,370.82. By his own admission, Mr. Johnson'never opposed any of his ex-wife’s motions to obtain these funds.
In July 2012, Mr. Johnson’s son reached the age of majority. Deciding that his son no longer needed financial support, Mr. Johnson contacted the annuity company, now known as Symetra Life Insurance Company, to request that the final payment of $50,000 due on August 15, 2013, be made to him. However, the company informed him that it was prohibited from *884 doing so by the Maryland court order.[4] Furthermore, on | ¿July 2, 2013, Ms. Paler-mino filed a request in the Maryland court for judgment for $53,477.58 in child support arrearages and for satisfaction through the annuity. As explained below, she actively pursued this litigation, which was not opposed by Mr. Johnson, and she obtained judgments in her favor.
Instead of going to Maryland to contest his ex-wife’s demands, Mr. Johnson — who was domiciled in Florida — filed pleadings in the original Franklin Parish personal injury suit, which had been fully dismissed in October 1993. Mr. Johnson filed a petition for declaratory judgment, enforcement of settlement agreement, damages, and injunctive relief on August 12, 2013, two days before the final payment was due to be distributed. The suit .was recap-tioned, and named as defendants were Safeco Life Insurance Company, Safeco Assigned Benefits Service Company, Symetra Life Insurance Company, and Symetra Assigned Benefits Service Company (SABSCO). Mr. Johnson asked for a declaratory judgment determining the rights of the parties, as well as damages for breach of contract and injunctive relief ordering direct payment of the $50,000 final installment to him or into the registry of the Louisiana court (not the Maryland court, which he contended lacked jurisdiction over the annuity or payments under it). Mr. Johnson asserted in his petition that the Maryland order had no res judi-cata effect and was not entitled to full faith and credit. He also claimed that he was in the process of hiring counsel in | ^Maryland to seek modification or elimination of the Maryland order. A rule to show cause was set for October 7, 2013, in the Louisiana court.
Faced with litigation in two different states and the potential for conflicting court orders, Symetra sought an emergen-, cy hearing before the Maryland court. Its request for a TRO was granted on September 17, 2013, prohibiting Mr. Johnson from proceeding in the Louisiana court in contravention of the Maryland court’s orders. In its order, the Maryland court made note of several facts, including the provisions of the November 1997 final injunction; the ex-wife’s request for a judgment of arrearages and an order requiring payment of the annuity payment in partial satisfaction of such a judgment; and Mr. Johnson’s actions seeking dissipation of the annuity to himself without order of the Maryland court. The TRO stated that Mr. Johnson could move to vacate the order on two days’ .notice to his former wife and Symetra and that it would expire not later than 35 days after issuance.[5] Also on September 17, 2013, due to Mr. Johnson’s failure to file any responsive pleadings, a default judgment was rendered in favor of Ms. Palermino on her requests for judgment for $53,477.58 in child support ar-rearages and for satisfaction through the annuity, subject to Mr. Johnson’s right to move to vacate the order within 30 days of its entry.
Meanwhile, some legal jockeying occurred in the Louisiana proceedings. Mr. Johnson filed a motion to file documents into the record on September 17, 2013. Among these were letters and emails exchanged between his counsel and Syme- *885 tra’s attorneys pertaining to Symetra’s 17request in late August 2013 for an extension of time until October 4, 2013, in which to respond to Mr. Johnson’s petition (which was apparently granted), as well as Symetra’s pursuit of a TRO in Maryland. The documents were filed to “clarify” why the defendants were not filing responsive pleadings in the Louisiana suit but were instead seeking to enjoin further proceedings in Louisiana by order of the Maryland court. Mr. Johnson alleged that the defendants had not filed any responsive pleadings and asserted his intention to seek preliminary defaults against all defendants who had been served.
On September 20, 2013, Symetra filed a motion for summary judgment. In its memorandum, Symetra discussed the final injunction in 1997 and the subsequent orders obtained by Ms. Palermino to satisfy Mr. Johnson’s child support obligations in 1997, 2001, 2005 and 2009. It also recounted the Maryland default judgment rendered on September 17, 2013, in favor of Ms. Palermino for Mr. Johnson’s latest arrearages and the TRO issued that same day prohibiting Mr. Johnson from proceeding in the Louisiana court in contravention of the Maryland court’s orders. Symetra argued that there were no disputed facts, that it was bound by the Maryland court orders, and that Mr. Johnson’s appropriate remedy was to seek relief in the Maryland courts. It further contended that Mr. Johnson, contrary to his earlier assertion that he was obtaining counsel in Maryland, had no intention of participating in those proceedings, instead opting to litigate in Louisiana, a forum he perceived as more favorable.
IsAmong the numerous attachments to Symetra’s motion for summary judgment were copies of the Maryland court orders and of the various correspondence exchanged about the annuity over the years. These included letters between ■ Symetra and counsel for Ms. Palermino in which Symetra stated that it would comply with the final injunction, as well as letters to Mr. Johnson informing him of that compliance as payments were made over the years.
SABSCO, f/k/a Safeco Assigned Benefits Service Company, filed dilatory exceptions of vagueness and ambiguity and a peremptory exception of no cause of action on September 20, 2013. It generally contended that Mr. Johnson’s petition failed to set forth any facts upon which it could be held liable to him.
At a hearing on October 7, 2013, the Louisiana court stayed all of the Louisiana proceedings due to the Maryland injunction and TRO. Judgment was signed November 12, 2013, staying the proceedings pending further orders of the court. Although counsel for Mr. Johnson indicated that he would take writs on the stay order, no such relief was ever sought.
Although Mr. Johnson had a Maryland attorney who wrote a letter to Symetra on his behalf in November 2013, he still did not contest the matter in the Maryland court. Thereafter, on January 9, 2014, the Maryland court entered judgment in favor of Ms. Palermino in the amount of $54,183.78 for Mr. Johnson’s outstanding child support arrearages. The judgment ordered payment under the annuity contract in the amount of $50,000 to be made to Ms. Palermino and that “all prior orders of this Court not specifically 19modified herein, shall remain in full force and effect, including the order enjoining [Safeco] from making any distributions out of the said life insurance contract without relief of this Court.” On January 24, 2014, Symetra complied with the order by issuing a check for $50,000 to Ms. Palermino.
On February 24, 2014, the Louisiana stay was lifted by consent of the parties. *886 In April 2014, the defendants moved to reset the motion for summary judgment and exceptions in the Louisiana court. Symetra filed a supplemental memorandum in support of its motion for summary judgment and also attached copies of the January 2014 Maryland judgment and the check issued in compliance with the judgment. On June 18, 2014, Mr. Johnson filed an opposition to the exceptions and the motion for summary judgment.[6]
On June 26, 2014/ the motion for summary judgment and the exceptions were argued before the trial court. Pursuant to Mr. Johnson’s request, the entire record was introduced into evidence; this included a copy of the record of the Maryland proceedings. Symetra contended that Mr. Johnson failed to make a valid collateral attack on the Maryland judgment and had no legal basis to support such an attack. Since Symetra was bound by all of the Maryland judgments and had consented to the Maryland court’s jurisdiction, it maintained that it was obliged to comply with that court’s orders, including the most recent one instructing it to make direct payment of the $50,000 to Mr. Johnson’s ex-wife. Mr. Johnson claimed that | mMaryland lacked jurisdiction and that the Louisiana court was- the only court where Symetra was properly served and made a party to the proceedings. He asserted that it was “tomfoolery” to suggest that Symetra had to comply with the Maryland order. In rebuttal, Symetra argued that Mr. Johnson waived the issue of personal jurisdiction by not asserting it in Maryland.
The trial court gave oral reasons on the record which granted the summary judgment in favor of Symetra. It described Symetra as “a victim in this case” which was caught in the middle. It stated that the responsibility was upon Mr. Johnson to go to Maryland and assert that the money was not subject to seizure and let the Maryland court decide that issue; however, he failed to do so. Additionally, the court granted SABSCO’s exception of no cause of action with prejudice.
The judgment granting Symetra’s motion for summary judgment and dismissing Mr. Johnson’s claims against it with prejudice was signed on July 14, 2014. Also signed that date was the judgment granting SABSCO’s exception of no cause of action and dismissing Mr. Johnson’s claims against it with prejudice.
Mr. Johnson appealed the granting of summary judgment in favor of Symetra. He also complained that the judgment dis1 missing SABSCO was granted with prejudice.
In SUMMARY JUDGMENT

Law

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC, 49,375 (La.App.2d Cir.10/1/14), 150 So.3d 492, writ denied, 2014-2304 (La.1/23/15), 159 So.3d 1058. Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).
Appellate courts review summary judgments de novo, under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Samaha v. Rau, supra. A court must grant a motion for summary judg *887 ment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2); Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC,t supra.
The moving party bears the burden of proof. However, if- the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party’s claim, action, or defenses. He need only point out an absence of factual support for one or more essential | ^elements of the adverse party’s-claim, action or defenses. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2); Driver Pipeline Co., Inc. v. Cadeville Gas Storage, LLC, supra.

Discussion

We note at the outset that Mr. Johnson does not contest the jurisdiction of the Maryland court as to him. Rather, his arguments are that the Maryland court did not have jurisdiction over Symetra and that the Maryland court orders were void. Symetra maintains that the material facts are essentially undisputed for purposes of summary judgment, and we agree. Syme-tra further argues that it did not breach its annuity contract with Mr. Johnson because it was obliged to comply with binding Maryland court orders.[7] It further asserts that, if Mr. Johnson wished to contest Symetra’s compliance with these orders, the proper forum for such action was the Maryland court which issued them.
Mr. Johnson argues that he is entitled to collaterally attack the Maryland court judgments in the instant suit. He contends that all of the Maryland court orders beginning in 1997, which affect the annuity payment, are somehow void. At oral argument, his counsel acknowledged that Mr. Johnson chose not to contest them in Maryland because of the outstanding contempt citations against him due to his refusal to pay his child support | ^obligation. He maintains that the 1997 final injunction and January 2014 judgment were improper because seizure of the annuity would have been prohibited pursuant to Md.Code § 11-504.[8] See Rosemann v. Salsbury, *888 Clements, Bekman, Marder & Adkins, LLC, 412 Md. 308, 987 A.2d 48 (2010). However, as pointed out by Symetra, this exemption appears to be in the nature of an affirmative defense that the person claiming it “must take affirmative steps to assert.” See Johns Hopkins Hosp. v. Post, 321 Fed.Appx. 259 (4th Cir.2009). Although Mr. Johnson had Maryland counsel during the initial divorce proceedings and as recently as November 2013, he failed to assert this affirmative defense before the Maryland courts even during the period when the Louisiana proceedings were stayed. Mr. Johnson has failed to come forth with any legal authority to support his arguments.[9]
J^U.S. Const. Art. IV, § 1 mandates:
Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.
Louisiana is required to give full faith and credit to judgments of courts in sister states unless the foreign forum lacked jurisdiction over the litigants or over the subject matter involved in the controversy. Winston v. Millaud, 2005-0338 (La.App. 4th Cir.4/12/06), 930 So.2d 144. Although the jurisdiction of a court rendering a judgment may be open to judicial inquiry when enforcement of that judgment is sought within this state, there is a general presumption that the decree is valid and the burden of undermining such a judgment rests heavily upon the assailant. Winston v. Millaud, supra. The burden to establish that the court of the rendering state was without jurisdiction can only be discharged by clear and positive proof. Winston v. Millaud, supra.
Full faith and credit may also be denied when a collateral attack on the foreign judgment would have been permitted in the state that rendered the judgment. Anderson v. Collins, 26,142 (La.App.2d Cir.1/6/95), 648 So.2d 1371, writs denied, 95-0629, 95-0783 (La.4/21/95), 653 So.2d 576. The litigant who seeks to deny a foreign judgment full faith and credit based on availability of a collateral attack where rendered has the burden of alleging and proving the basis for the availability of the collateral attack. Lepard v. Lepard, 31,351 (La.App.2d Cir.12/9/98), 722 So.2d 367.
11aThere is no question that Maryland had subject matter jurisdiction over the enforcement of delinquent child support ordered by a Maryland court in a divorce rendered in that state for a couple who resided there at the time the marriage dissolved and where one of the spouses continued to live afterwards with a child of that marriage. There is continuing jurisdiction in such a case. See Furman v. Glading, 36 Md.App. 574, 374 A.2d 414 (1977), aff'd, 282 Md. 200, 383 A.2d 398 (1978).
As stated above, Mr. Johnson does not contest that the Maryland court had personal jurisdiction over him. Instead he contends that Maryland somehow lacked jurisdiction over Symetra despite the fact that Symetra has now complied with numerous orders issued by the Maryland court. Mr. Johnson’s position is completely without merit.
Personal jurisdiction is a waiva-ble right. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 *889 L.Ed.2d 528 (1985); Lovering v. Lovering, 38 Md.App. 360, 380 A.2d 668 (1977). Unlike subject matter jurisdiction, personal jurisdiction represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). As a result, it is waivable by the affected parties, and therefore cannot be raised on their behalf by anyone else. Seven Arts Pictures, Inc. v. Jonesfilm, 2011 WL 2461701 (E.D.La.2011). Therefore, Mr. Johnson is not entitled to raise that issue on Symetra’s behalf.
|inIt is beyond question that obedience to judicial orders is an important public policy. Symetra has simply obeyed Maryland court orders dating back to 1997. Had Symetra not obeyed them, it could have been held in contempt of court. Symetra had no contractual or legal duty to defend or represent Mr. Johnson in a domestic dispute with his former wife.
The case before us differs vastly from the usual one involving full faith and credit wherein a party to the out-of-state litigation brings a judgment here to. be made executory. Collateral attacks on the out-of-state judgment can be made under limited circumstances. In the instant case, there are no allegations claiming that the foreign judgment was obtained through extrinsic fraud which could possibly support a collateral . attack here. See Anderson v. Collins, supra. It is not the role of the Louisiana court to effectively act as an appellate court reviewing out-of-state judgments rendered by a court of proper jurisdiction which a litigant — who was a party to those proceedings and had every opportunity to litigate the matter in that forum — now wishes to evade.
Mr. Johnson has the burden of proving that he has a legal basis for making a collateral attack on the Maryland judgments. He has completely failed to carry that burden. The record before us indicates that the Maryland court had both subject matter and personal jurisdiction over the litigants. As to the alleged exemption from seizure, Mr. Johnson has failed to demonstrate that this argument would have qualified as the basis for a collateral attack in Maryland.
[17Because Symetra has demonstrated that there are no disputed issues of material, fact and that Mr. Johnson cannot carry his burden of proof, we find that summary judgment in favor of Symetra is appropriate. Accordingly, we affirm the trial court ruling granting summary judgment in favor of Symetra.
SABSCO DISMISSAL
Mr. Johnson contends that the trial court erred in granting SABSCO’s exception of no cause of action with prejudice. In his pleadings responding to the exception, Mr. Johnson conceded that it was “meritorious” but asserted that the exception should be granted “without prejudice.” In his brief to this court, Mr. Johnson contended that the trial court “appeared to accept plaintiffs position” at the hearing on the defendants’ exceptions and motion for summary judgment and that the dismissal was subsequently made “with prejudice” through an “oversight.”
The hearing transcript contains the following exchange as to the dismissal of the exception with prejudice:
MS. LAWRENCE [Defendants’ counsel]: ... There’s also Your Honor, should be an exception of' no cause of action. There are dilatory exceptions and a declinatory exception of no cause of action filed on behalf of Symetra Assigned Benefits Service Company that I *890 believe plaintiff has conceded that Syme-tra Life is the proper party and that he has not-does not have a claim against Symetra Assigned Benefits Service Company so he would ask that that exception be'maintained and that Symetra Assigned Benefits Service Company be dismissed with prejudice.
COURT: Is that correct, Mr. Bruscato?
MR. BRUSCATO [Plaintiffs counsel]: I stand on our response, Your Honor, there’s so much to review for this morning I don’t know what our response is but however we responded, if she correctly recited that
[[Image here]]
liaCOURT: That was my appreciation of it.
MR. BRUSCATO: All right. But for
[[Image here]]
COURT: That will be granted as to the second company.
As is evident from the above exchange, there was no agreement by the trial court to dismiss SABSCO without prejudice. SABSCO contends — and Mr. Johnson does not deny — that prior to its signing, the judgment was circulated to his counsel, who made no complaint about the “with prejudice” language. Even if Mr. Johnson’s assertions were correct, the written judgment controls over oral or written reasons for judgment. Pitard v. Schmittzehe, 28,571 (La.App.2d Cir.8/21/96), 679 So.2d 515. Furthermore, given Mr. Johnson’s admission that he had no claim against SABSCO, this was not a situation where the grounds raised in the exception could be cured by amending his petition to state a cause of action. La. C.C.P. art. 934. Thus, we conclude that the trial court did not err in dismissing Mr. Johnson’s claims against SABSCO with prejudice.
This assignment of error lacks merit.
CONCLUSION
The trial court ruling granting summary judgment in favor of Symetra Life Insurance Company and dismissing Mr. Johnson’s claims against Symetra is affirmed. The trial court judgment dismissing SAB-SCO with prejudice is affirmed. Costs of this appeal are assessed to the appellant, Donald Johnson.
AFFIRMED.

. The record shows that Safeco changed its name to Symetra in 2004.

. He apparently moved to Florida in late 1997 but had returned to Louisiana by 2001. When the instant proceedings were instituted in 2013, Mr. Johnson was again a resident of Florida.

.Among the Maryland court documents found in the record are two handwritten letters by Mr. Johnson (one to the Maryland court and the other to his wife’s attorney) in which he stated that he wanted to "give up” his parental rights to his son. In one of the letters, he asserted that he wanted a divorce but claimed he was unable to pay child sup *883 port. Both were written before he retained counsel.

. On several previous occasions, notably in 1999 and 2001, Mr. Johnson had written to Safeco, giving directions and addresses to which he wanted the annuity payments sent. On those occasions, the company likewise responded by informing him that it was enjoined from delivering payments to him by the final injunction until it received direction from the court.

. On Symetra’s motion, it was later extended to November 26, 2013.

. Mr. Johnson conceded that SABSCO’s exception of no cause of action was meritorious but asserted that the dismissal of his claims should be without prejudice.

. The record indicates that Ms. Palermino's attorney served Safeco by mail with the November 1997 final injunction and that Safeco thereafter complied with that injunction and the subsequently issued orders. We are unaware of any prohibition to Safeco/Symetra submitting itself to the jurisdiction of the Maryland court, especially when it was licensed to transact business in that state.

. In relevant part, this provision states:
Items exempt from execution on judgment (b) The following items are exempt from execution on a judgment:
[[Image here]]
(2) Except as provided in subsection (i) of this section, money payable in the event of sickness, accident, injury, or death of any person, including compensation for loss of future earnings. This exemption includes but is not limited to money payable on account of judgments, arbitrations, compromises, insurance, benefits, compensation, and relief. Disability income benefits are not exempt if the judgment is for necessities contracted for after the disability is incurred.
However, the statute was amended in 2011 to include the following:
Net recovery defined
[ (Ü 1(2) Twenty-five percent of the net recovery by the debtor on a claim for personal injury is subject to execution on a judgment for a child support arrearage.

. Symetra lias supplied this court with a plethora of jurisprudence from the state of Maryland which fully supports its arguments.