GARRETT,'J.
hThe defendant, RockTenn CP, L.L.C. (“RockTenn”), appeals from a trial court grant of summary judgment in favor of Turner Specialty Services, L.L.C. (“Turner”), and a grant of partial summary judgment in favor of the plaintiffs, Gregory M. Rob,ert and Earl E. Pania, finding that RockTenn was solely liable for the accident in this case. For the following reasons, we affirm the trial court judgments.
FACTS
RockTenn operates á pulp mill in Hodge, Louisiana. As part of regular maintenance, it contracted with Turner to supply several truckloads of hydrochloric acid to clean one of its digesters. Turner *1071 had performed this service for RockTenn on numerous occasions. A cleaning was scheduled for May 6, 2012. Turner’s employees, William Thomas and Charles Marsh, arrived at RockTenn to prepare for the operation, which involved circulating approximately 15,000 gallons of acid in the digester for three to five hours.
Turner hired truckers who were independent contractors to transport the acid. Turner had a pump and hose that connected the trucks to RoekTenn’s pipes. Rock-Tenn had a checklist of duties to perform in its plant before Turner began pumping acid. Kevin Norred, the assistant mill supervisor at RockTenn, stated that the digester has several zones and RockTenn informed Turner which zone should receive the acid first. After RockTenn’s preparations, were complete, Turner was instructed to begin punaping the acid.
■ Several truckloads of acid were necessary to complete the job. The- two plaintiffs were the first , truckers in line to supply acid. Mr. Thomas ^testified in his deposition that he began pumping acid from Mr. Robert’s truck. Mr. Thomas had a flow meter to gauge how much acid was delivered. The flow meter showed that nine gallons had been pumped and then the meter stopped. Mr. Thomas stopped pumping, checked Turner’s equipment, and found, no problem. RockTenn was asked to check its equipment. RockTenn told Turner’s employees that it found no problems and instructed them, to begin pumping acid. Another attempt to pump was unsuccessful.
Mr. Thomas increased the pressure on Turner’s pump and tried pumping acid again. Turner’s hose ruptured, spraying Mr. Thomas with liquid acid, as well as the trucks operated by the plaintiffs.[1] The plaintiffs claim they came into contact with acid fumes and their trucks were damaged by contact[1] with the acid.
After replacing the hose, Turner again tried unsuccessfully !to pump acid. Mr. Norred walked .the line at RockTenn and discovered that one of its valves was only 20-25% open. He opened the valve completely. Turner began pumping acid again. This time, no problems were encountered and the cléáning process was completed.
On February 11,2013, the plaintiffs filed separate suits against Turner and Rock-Tenn, claiming that they sustained physical and mental pain and suffering as a result of the accident. They also claimed damage to their trucks and loss of income. The cases were later consolidated. The petitions averred:
IsThe aforesaid accident- and resulting damages .were caused by the sole negligence of the employees of Turner Specialty Services, L.L.C., and or RockTenn CP, L.L.C. for the following reasons, among others, to wit:
a. Failing to open the valve inside the plant before offloading the hydrochloric acid from the Robert truck.
b. Failing to make sure all valves were open before off loading the hydrochloric acid from the Robert truck.
c. Any other acts or omissions which ' may be shown at trial.
RockTenn answered with a general denial and asserted that it contracted with Turner for acid' cleaning, hydroblast and vacuum services. It claimed that Turner was an independent contractor and Rock-Tenn was not liable for ,any alleged negligence of Turner or its employees. Rock-Tenn did not assert the affirmative defense of comparative negligence against Turner or any other party.
*1072 Turner answered the plaintiffs’ petitions, denying their claims and asserting the affirmative defense of comparative negligence on the plaintiffs’ parts, and “a person or persons, party or parties, and/or entity or entities, for whom Turner is in no way responsible, answerable or liable, and therefore, any and all damages should be reduced accordingly.”
Extensive discovery was undertaken. On July 28, 2014, Turner filed a motion for summary judgment claiming that the plaintiffs had failed to produce any evidence to establish any liability on its part. It asserted that no action or inaction on its part caused the accident and it did not breach any duty. It argued that the sole cause of the accident was the failure by LRockTenn to have its valve completely open. Turner attached portions of the depositions of numerous witnesses.
■The plaintiffs opposed Turner’s motion and also filed their own motion for partial summary judgment, asserting there was no genuine issue of material fact as to the liability of RockTenn and Turner. Attached to the motion were the depositions of numerous witnesses.. RockTenn then opposed the motions filed by the plaintiffs and by Turner,.
Both motions were argued before the trial court on November 10, 2014. Turner and the plaintiffs argued that RockTenn admitted its valve was partially closed and, after it was fully opened, there were no problems pumping in the acid. RockTenn urged that there was a genuine issue of material fact regarding comparative fault and contended that Turner’s hose could have been defective. RockTenn pointed out that Turner owned the hose that broke and had control of the pump used to inject acid into RockTenn’s pipes. Turner’s flow meter showed that only nine gallons of fluid had been pumped. According to RockTenn, the closed valve could not have created enough pressure, with only nine gallons of fluid for Turner’s hose to rupture.
• The trial court noted that RockTenn had presented “no expert or anybody” to establish that Turner’s hose was defective. The trial court granted the motion for summary .judgment on behalf of Turner, dismissing the plaintiffs’ claims against it. The motion for partial summary judgment by the plaintiffs was granted as to their claim against RockTenn on the issue of liability, but denied regarding their claim against Turner. Judgments | swere signed on November 21, 2014, and November 25, 2014. Notably, the plaintiffs, who instituted this litigation, do not seek review of the denial of their motion for partial summary judgment against Turner, nor have they appealed from the summary judgment rendered in favor of Turner. Indeed, on appeal, they have conceded the correctness of the rulings made below and are in full agreement that Turner should be dismissed as a defendant.[2] Only RockTenn has appealed from the judgments.
RockTenn raises several assignments of error regarding the trial court’s rulings which make it solely liable for the accident in this- case. RockTenn contends the trial court erred in finding there were no genuine issues of material fact regarding either its fault or comparative fault of Turner, and relying upon the lack of any expert testimony in reaching its rulings. These arguments are without merit.
. LEGAL PRINCIPLES
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all' or *1073 part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Driver Pipeline Co., Inc. v. Cadeville Gas Storage,. L.L.C., 49,376 (La.App.2d Cir.10/1/14), 160 So.3d 492, writ denied, 2014-2304 (La.1/23/15), 169 So.3d 1058. Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).
16Summary judgment shall be granted if the pleadings, depositions, answers to -interrogatories, . and admissions, together with the affidavits, if any, -admitted' for purposes of summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(B); Grant v. Sneed, 49,611 (La.App.2d Cir.11/19/14), 155 So.3d 61.
The moving party bears the burden of proof. However, if the movant will -not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant is not required to negate all essential elements of the adverse party’s claim, action, or defense. He need only point out an absence of -factual support for one or more essential elements of the adverse party’s claim, action or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2); Driver Pipeline Co., Inc. v. Cadeville Gas Storage, L.L.C., supra; Johnson v. Williams, 49,749 (La.App.2d Cir.4/15/15), 163 So.3d 880, writ not cons., 2015-1180 (La.9/18/15), 177 So.3d 1063.
An adverse party may not rest on the mere allegations or denials of his pleading; but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing-that there is a genuine issue for trial. La. C.C.P. art. 967; Samaha v. Rau, supra; Grant v. Sneed, supra,
17A fact is material if it potentially ensures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Stated another way, a “material fact” is one in which “its existence or nonexisténce may be essential to plaintiff s cause of action under the applicable theory of recovery.” Sam-aha v. Rau, $npra. A genuine issue exists where reasonable persons, after considering the evidence, could disagree. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Tatum v. Shroff, 49,518 (La.App.2d Cir.11/19/14), 153 So.3d 561.
Appellate courts review summary judgments de novo, under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Samaha v. Rau, supra.
To prevail on a negligence claim under La. C.C. arts. .2315 .and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause-of the plaintiffs injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). A negative answer to any of the above inquiries will result in the determination of no liability. Patrick v. Poisso, 38,841 (La.App.2d Cir.9/22/04), 882 So.2d 686.
*1074 ^LIABILITY OF ROCKTENN
According to RockTenn, the trial court erred in finding there were no genuine issues of material fact regarding the fault of the company. This argument is without merit.
RockTenn urges that its partially closed valve was 100 to 120 feet above ground and was six inches in diameter. Turner’s two-inch hose was 80 feet long and consisted of two-ineh double-flex all-chem hose. After the first attempt to offload' acid, Turner’s flow meter showed that only nine gallons had flowed into the line. According to RockTenn, there were 200 feet of hose and pipe between Turner’s pump and the closed valve. RockTenn asserts this should have held nine gallons of fluid without rupturing. RockTenn maintains that the valve was not completely closed and the partial obstruction would not create enough pressure to burst the hose.
In support of its argument, RockTenn cites some testimony from Mr. Norred’s deposition. When asked whether the partially closed valve could have caused pressure to build up, rupturing Turner’s hose, Mr. Norred stated:
If there was nothing there in the line and the valve was pinched back, it should not have caused enough pressure to blow a line, no. As far as that goes, if the valve would have been closed all the way off; the line still should not have ruptured. Whether or not the choked valve actually — now, -as you choke a valve back — we’re using choke. As you pinch a valve back, close a valve back, definitely more pressure is going to build up behind it, if you’ve got a pump running. The further closed you get the more pressure you’re going to have, so I don’t know if I’m answering your question.
Mr. Norred agreed that after the valve was opened, the job ran smoothly.
|flMr. Marsh; Turner’s superintendent who was present when this accident occurred, stated in his deposition that the accident was caused by pumping into a deadhead, which he defined as something that was not open. He said Turner rented the stainless steel four-inch pump with a diesel engine. RockTenn required Turner to pump 175 gallons of acid per minute and the hose could withstand 2,500 pounds of pressure. Mr. Marsh stated that the pump had a pressure gauge, but not a pressure relief valve. He stated that none of Turner’s equipment malfunctioned. ■ As soon as RockTenn opened its valve, the work proceeded smoothly.
Mr. Thomas, Turner’s employee who was pumping the acid into RockTenn’s pipes, said in his deposition that when the acid initially failed to flow into RockTenn’s pipes, he stopped and checked Turner’s equipment, including the flow meter, and found no problems. Turner attempted to pump acid a second time without success. RockTenn’s employees were asked to check their equipment. After five to 10 minutes, • RockTenn employees told Mr. Thomas that everything was fine. After trying to pump again, still no acid would flow into RockTenn’s pipes. Mr. Thomas said this indicated that RockTenn’s- line was blocked or there was head pressure greater than what Turner’s pump was pumping out. Mr. Thomas determined that Turner had to pump harder to break through-whatever was; in RockTenn’s line. Mr. Thomas increased the pressure on Turner’s pump. At that point, the hose ruptured, spraying Mr. Thomas with acid. He showered, put on a clean uniform, and replaced the ruptured hose. Turner tried to pump again without success. Mr. Thomas shut down the job. and told ImRockTenn there was a problem with their equipment and they had to And out what was going on. Approximately 10 to 15 minutes later, RockTenn employees told *1075 Mr.-Thomas they found a valve that was closed. After the valve was opened, Turner started pumping acid and did not have a problem after that.
' We note that Mr. Norred said, if there was nothihg in the line, there should not have' been enough pressure ■ to rupture Turner’s hose. However, he said that if a valve was closed and a pümp was" running, moré pressure would build up. Mr. Thomas’s deposition shows that there was liquid acid in the line as well as pressure from Turner’s pump. Also, according to the uncontradicted deposition testimony of Mr. Thomas, Turner was unable to pump acid even after the ruptured hose was replaced. Turner was only able to pump acid after RockTenn opened its partially closed valve.
We do not find any disputed genuine issue of material fact in this case regarding the liability of RockTenn. The depositions show that Turner attempted to pump liquid acid, under pressure, into RockTenn’s pipes. RockTenn told Turner employees that it had checked its equipment and there was no reason not to pump the acid. There is no dispute that RockTenn had a partially, closed valve. Turner’s hose ruptured while trying to overcome the resistance created by the partially closed valve. Even after replacing the ruptured hose, Turner was not able to pump acid until RockTenn opened its partially closed valve. After that, the job proceeded without difficulty.
InRockTenn also asserts that the partially closed valve was a defect and the company could not be liable unless it knew or should have known of the defect. According to RockTenn, there is no evidence that it had any knowledge that the valve was partially closed., We reject this argument.
To Recover for damages • caused by a defective thing, a- plaintiff must prove that the thing was in defendant’s custody, that the thing contained a defect which presented an unreasonable risk of harm to others, that this defective condition caused damage,' and that defendant knew or should have known of the defect. La. C.C. art. 2317.1. A “defect” in a thing, for which one having custody of the thing may be liable for damages caused, is a condition or imperfection that poses an unreasonable risk of injury to persons exercising ordinary care and prudence. Todd v. Angel, 48,687 (La.App.2d Cir.1/15/14), 132 So.3d 453, writ denied, 2014-0613 (La.5/16/14), 139 So.3d 1027.
It does not appear that the closed valve was the sort of condition or imperfection that would be defined as a defect. However, the depositions show that RockTenn was asked on several occasions to check its equipment and failed to discover the closed valve until Mr. Norred walked the line. There was no explanation as to why the closed valve was not found on earlier inspections. Under these circumstances, even if the closed valve could be defined as a defect, RockTenn should have known of its existence."
The undisputed facts show that Rock-Tenn’s closed valve was the cause of the accident. The trial court did not err in its finding. ¡ ,
I ^COMPARATIVE FAÜLT
RockTenn asserts that there are genuine issues of material fact regarding the comparative fault of Turner in causing this accident. This argument is without merit.
La. C.C. art. 2323 provides in pertinent part:
A. In any action for damages where a person suffers injury, death, or loss,, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a *1076 party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, in-eluding but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount, of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
This provision was amended by Acts 1996,1st Ex.Sess., No. 3, § 1, eff. April 16, 1996. In Keith v. U.S. Fid. & Guar. Co., 1996-2075 (La.5/9/97), 694 So.2d 180, the supreme court compared La.. C.C. art. 2323, as amended, to its predecessor, and found that the basic structure for comparative fault is unchanged. However, the court observed that the legislature added more specific language to the article making it mandatory for the determination of the percentage of fault of all persons contributing to an injury, whether those persons are unidentified nonparties, statutorily immune employers, or others.
11sLa. C.C.P. art. 966(G) was recently amended and now specifically provides as follows:
G. (1) When the court grants a motion for summary judgment in accordance with the provisions of this Article, that a party or nonparty is not negligent, not at fault, or did not cause, whéther in whole or in part, the injury or harm alleged, that party or nonparty shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or nonparty nor shall the issue be submitted to the jury nor included on the. jury verdict form. This Paragraph shall not apply when a summary judgment is granted solely on the basis of the successful assertion of an affirmative defense in accordance with Article, 1005, except; for negligence or fault.-
.,(2) If the provisions of this Paragraph are applicable to the summary judgment, the court shall so specify in the judgment. If the court fails to specify that the provisions of this Paragraph are applicable, then the provisions of this Paragraph shall not apply to the judgment.
The trial court’s summary judgment in favor of Turner, dismissing the claims against it, included the specification that:
Pursuant to Louisiana Code of Civil Procedure article 966, Turner-Specialty Services, L.L.C. shall not be considered in any subsequent allocation of fault at trial.
Regarding affirmative ' defenses, La. C.C.P. art. 1005 provides in pertinent part:
The answer shall set forth affirmatively negligence, or fault of the plaintiff and others, ... and any other matter constituting an affirmative defense. '
Comparative fault must be pleaded as an affirmative defense and the party asserting the defense bears the burden of proving, by a preponderance of the evidence, that the negligence of the other party was’a cause in fact of the accident. Trahan v. Savage Industries, Inc., 96-1239 (La.App. 3d Cir.3/5/97) 692 So.2d 490, writs denied, 1997-1636 (La.10/3/97), 701 So.2d 207, 1997-1652 (La.10/3/97), 701 So.2d 209; Otillio v. Entergy Louisiana, Inc., 02-718 (La.App. 5th Cir.12/11/02), 836 So.2d 293. See also Pruitt v. Nale, 45,483 (La.App.2d Cir.8/11/10), 46 So.3d 780.
*1077 Ordinarily, the determination of whether negligence, exists in a- particular case-is a question of fact; .therefore,;cases' involving a-question of negligence ordinarily are not appropriate for summary judgment. Freeman v. Teague, 37,932 (La.App.2d Cir.12/10/03), 862 So.2d 371; Powers v. Tony’s Auto Repair, Inc., 98-1626 (La.App. 4th Cir.4/28/99), 733 So.2d 1215, writ denied, 1999-1552 (La.7/2/99), 747 So.2d 28; Pruitt v. Nale, supra. This principle extends to a question of comparative fault as well. However, where reasonable minds cannot differ, a question of comparative fault is a question of law that may be resolved by summary judgment. See Rance v. Harrison Co., Inc., 31,503 (La.App.2d Cir.1/20/99), 737 So.2d 806, writ denied, 1999-0778 (La.4/30/99), 743 So.2d 206; Pruitt v. Nale, supra.
It is important to note that it was the plaintiffs who pled that the accident was caused by the failure to open the valve on the inside of the plant, and in failing to make sure all' valves were open before offloading the hydrochloric acid from the Robert truck. In their opposition to Turner’s motion and in their own motion, the plaintiffs claimed there were no genuine issues of material fact as to the liability of RockTenn and Turner. However, as explained above, the trial court granted the plaintiffs’, motion as- to RockTenn, but denied it as to Turner. The trial court granted Turner’s motion, finding there were no genuine issues of material fact and no I ^evidence that Turner was liable. The plaintiffs’ claims against .Turner were dismissed and the judgment specified, in accordance with La, C.C.P. art. 966(G), that Turner shall not be considered in any subsequent allocation of fault at trial. The plaintiffs did, not appeal or seek review of any of these rulings and they concede on appeal the correctness of the rulings made below. Despite extensive discovery, the plaintiffs háye candidly conceded they have no case against'Turner.
While RockT,enn has argued, in its opposition to Turner’s motion, for summary judgment and on appeal that Turner was partially at fault in causing the accident, RockTenn has never asserted against Turner the affirmative defense of comparative fault in its pleadings. Therefore, in spite of RockTenn’s arguments, under the unique procedural posture of this case, there are no properly pled claims currently pending against Turner. ’RockTenn’s argument objecting to the summary judgment decisions regarding the plaintiffs’ claim's against Turner is without merit.[3]'
*1078 J^LACK OF EXPERT TESTIMONY
RockTenn urges that the trial court erred in rélying on a lack of expert testimony to show that there'was a defect in Turner’s hose. According to RockTenn, Mr. Norred testified that a completely blocked valve would not have been sufficient to rupture Turner’s hose; ■ The company contends that it had no obligation to produce expert testimony when there Was already sufficient evidence in the record to create a : genuine issue of material fact regarding causation of the accident. This argument is without merit.
La. C.E. art. 701 states:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
Regarding expert. testimony, La. C.E. art. 702 provides:
A witness who is qualified as an expert by knowledge, skill, experience, framing, or education may testify in the form of an opinion or otherwise if:
(1) The expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles and methods to the facts of the case.
In its argument below, and now before us, RockTenn relies upon its contention that there obviously was a defect in Tur-
ner’s hose. However, it 117points only to the testimony of Mr. Norred in support of its claim. As stated above, Mr. Norred actually said, if there was nothing in the line, the hose should not have broken. However, he also stated that, with a closed valve and a pump running, pressure would build up.
In his deposition, Mr. Pania was asked why he thought the hose ruptured. He said there were two reasons. First, Rock-Tenn’s valve was blocked. Second, Turner’s pump lacked a pressure relief system. According to Mr. Pania, any pump that could overpower the hose should have had a pressure release valve.
A witness’s speculation on an issue is of no probative value in determining a motion for summary judgment when there is no sound basis for the speculation. Skinner v. Derr Const. Co., 2005-0816 (La. App. 4th Cir.7/26/06), 937 So.2d 430, writ denied, 2006-2122 (La.11/17/06), 942 So.2d 535. See also Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002. Conclusory allegations, improbable inferences, and unsupported speculations will not suffice to create a genuine issue of material fact. See Richard v. Liberty Mut. Ins. Co., 2013-26 (La.App. 3d Cir.10/9/13), 123 So.3d 345; Smith v. Casino New Orleans Casino, 2012-0292 (La. App. 4th Cir.10/3/12), 101 So.3d 507; Sears v. Home Depot, USA, Inc., 2006-0201 (La. App. 4th Cir.10/18/06), 943 So.2d 1219, writ denied, 2006-2747 (La.1/26/07), 948 So.2d 168.
The depositions of both Mr. Norred and Mr. Pania only offered unsupported speculation as to the cause of the accident. They did not provide any factual information sufficient to establish a genuine issue of Immaterial fact which would preclude *1079 the grant of summary judgment in favor of Turner.
In granting summary judgment in favor of Turner, dismissing it from the case, the trial court stated that RockTenn had hot offered any “expert or anybody” saying that Turner’s hose was defective. The trial court was correct in finding that there had been no proof that the hose that ruptured was defective' in any way or that Turner was liable. We note again that the plaintiffs, who instituted this litigation, are in full agreement with all of the rulings made below and have conceded that they have no valid claims against Turner.
CONCLUSION
For the reasons stated above, we affirm the trial court’s grant of summary judgment in favor of Turner, finding that it was not liable for the accident in this case, and the partial summary judgment in favor of the plaintiffs, Gregory M. Robert and Earl E. Pania, finding that RockTenn .was solely liable. Costs in this court are assessed to RockTenn.
AFFIRMED. .

. Mr. Thomas was wearing protective clothing at the time of the accident. He was placed in a safety shower and washed the acid off. He was able to return to work.

. In oral argument before this court, plaintiffs’ counsel stated, "If there was ever a case for summary judgment, this is it.”

. In connection with this argument, Rock-Tenn claimed that Turner failed to adequately answer an : interrogatory regarding safety manuals, policies, or procedures provided to Turner personnel working at RockTenn on the date of the accident. RockTenn argues there are genuine issues of material fact regarding the lack of policies and procedures in place by Turner for operation of the pump and the lack of a pressure relief valve on it. The record shows that RockTenn did not file a motion to compel discovery under La. C.C.P. art. 1469. RockTenn has made only bare assertions that the answers to discovery were inadequate.
RockTenn cited Powell v. Chabanais Concrete Pumping, Inc., 11-408 (La.App. 5th Cir. 12/28/11), 82 So.3d 548, and Conques v. Wal-Mart Stores, Inc., 2000-00619 (La.App. 3d Cir.2/14/01), 779 So.2d 1094, writ denied, 2001-0715 (La.4/20/01), 790 So.2d 643. In Powell, the plaintiff construction worker was standing near a reducer that was clamped between the boom of a concrete pump truck and a hose. The reducer blew out and‘the plaintiff's eyes were packed with concrete. The case was decided in the plaintiff’s favor after a trial on the merits.
In Conques, the plaintiff was allegedly struck by, an automatic door in a Wal-Mart store. The appellate court reversed a summary judgment m favor of Wal-Mart, finding that the store did not establish there were no genuine issues of material fact as to whether it knew or should have known of the ruin, vice, or defect in the door. The appellate *1078 court cited incomplete responses to interrogatories as an additional reason for its decision. These cases are-inapposite to the present matter.