United States Court of Appeals
Fifth Circuit

**F I L E D**

May 3, 2005

Charles R. Fulbruge III
Clerk

REVISED MAY 5, 2005

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-10623
Summary Calendar

———————

RICHARD TERRANCE AYERS,

Plaintiff-Appellant,

VERSUS

JERRY PETERSON,
DIRECTOR-TDCJ-ID; ET AL.,

Defendants,

GARY JOHNSON; LINDA PATTESON; MICHAEL COUNTZ; JIM ZELLER;
ROBERT OTT; WINSTON HOLD; MELTON BROCK;
HERMAN TEINERT; L.N. HODGES; RICHARD DEAL; JUDY SLOAN,

Defendants-Appellees

———————————

Appeal from the United States District Court
for the Northern District of Texas
1:99-CV-11

———————————

Before DAVIS, SMITH, and DENNIS,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Texas state prisoner Richard Ayers appeals a summary judgment in this action brought under 42 U.S.C. § 1983 in which he alleges that his First Amendment rights have been unconstitutionally infringed by prison officials' pretextual refusals to allow him access to certain literature that has been mailed to him. Although summary judgment was proper as to certain materials, the district court erred in denying Ayers's previously-filed motions for leave to amend his complaint and for leave to supplement the appendices to his brief in opposition to summary judgment. Accordingly, we affirm in part and reverse in part.

I.

On January 14, 1999, Ayers sued Jerry Peterson, who was the director of the Texas Department of Criminal Justice ("TDCJ"), and members of the Director's Review Committee ("DRC"). According to Ayers, the defendants had deprived him of his First Amendment rights by denying him access to certain publicationsSSi.e., The Nigger Bible,[2] an essay on slavery, and the June/Summer 1998 issue of the Graterfriends Newsletter. On October 10, 2000, Ayers amended his complaint to name as defendants the new TDCJ director, Gary Johnson; Linda Patteson, a member of the Mail System Coordinator's Panel; seven members of the DRC, and two mailroom employees at the Robertson Unit. The amended complaint seeks injunctive relief and compensatory and punitive damages.[3]

In October 2001, the district court dismissed the suit as frivolous. The following May, however, a panel of this court reversed and remanded, holding that dismissal was premature because the court had not examined the materials in question. *Ayers v. Peterson*, No. 01-11554 (5th Cir. 2002) (unpublished).

On remand, defendants provided the court with copies of the challenged publications for its review, *in camera*, and moved for summary judgment. Before the court had ruled on the summary judgment motion, however, Ayers sought once again to amend his complaint to add claims relating to the allegedly pretextual denials of three other publications[4] he sought to receive. At the time of Ayers's motion, none of the defendants had been served with or answered the complaint. Ayers's motion was denied; the district court stated that "the denials [of access about which Ayers seeks to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2] Referred to hereinafter as "*The N . . . Bible.*"

[3] Ayers later agreed to dismiss any claims for damages against defendants in their official capacity because those claims would be barred by the Eleventh Amendment. *See Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) ("[A]s an instrumentality of the state, TDCJ-ID is immune from [] suit on Eleventh Amendment grounds."). To the extent that Ayers claims damages from the defendants personally, qualified immunity arguably would protect them. Because he cannot establish a constitutional violation, however, we do not reach the qualified immunity question.

[4] These publications include *The Vulture and the Nigger Factory, Walking on Borrowed Land*, and a copy of Volume 10 #4 of the magazine, *Justice Xpress.*

complain] in 2001 were prior to this Court's dismissal of Plaintiff's Amended Complaint."

Also before the district court ruled on summary judgment, Ayers sought leave to supplement the appendices to his brief in opposition to summary judgment. Specifically, he tried to comply with Federal Rule of Civil Procedure 56(e), which requires that all summary judgment evidence be attested to as authentic. The district court did not specifically address that motion but noted in its order granting summary judgment that all pending motions were denied.

With respect to the motion for summary judgment, the court held that Ayers had suffered no constitutional injury, so his suit should be dismissed. The court found that the publications in question were rejected in pursuit of a legitimate penological objective, because they advocated racial violence or otherwise threatened to the overall security of inmates and prison employees.

## II.

Ayers asserts three issues on appeal: (1) that the district court erred in denying him leave to amend his complaint; (2) that the court erred in not allowing him to supplement the appendices to his brief in opposition to summary judgment; and (3) that summary judgment was inappropriate because there were unresolved questions of material fact. We address each, in turn.

## A.

The denial of leave to amend pursuant to Federal Rule of Civil Procedure 15 is reviewed for abuse of discretion. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 245 (5th Cir. 1997). Nevertheless, that discretion is not unbounded:

In the absence of any apparent or declared reasonSSsuch as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.SSthe leave sought should, as the rules require, be "freely given."

*Id.* (quoting FED. R. CIV. P. 15(a)). "Outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." *Foman v. Davis*, 371 U.S. 178, 181 (1962).

## B.

The district court's only explanation for denying amendment was that "the denials in 2001 [of the materials the denial of which Ayers seeks to add to his complaint] were prior to this Court's dismissal of Plaintiff's Amended Complaint." We do not see the relevance of that fact. At the time of the district court's initial dismissal of this suit (which we reversed on appeal), no defendant had answered or even been served with the complaint. Further, as the district court noted, one of the alleged denials had not yet occurred at the time of the initial dismissal. We cannot see how justice or judicial economy is served by denying leave to amend on the district court's rationale.

Nevertheless, we may affirm for any reason supported by the record, even if not relied on by the district court. *See LLEH, Inc. v. Witchita County, Tex.*, 289 F.3d 358, 364 (5th Cir. 2002). It is therefore possible that, in light of the court's later decision to grant summary judgment, it considered the proposed amendment to be futile. That is, the district court could have concluded that just as it

believed the original three denials to be constitutional, the additional complaints were equally so.

Unfortunately, none of the materials that are subject to the denials about which Ayers seeks to amend his complaint to reflect is present in the record. As we said when this case was last before this court, it would be premature for a district court to dismiss this suit without having examined the materials. *Ayers*, No. 01-11554, at 3-4. The denial of leave to amend, therefore, cannot be properly affirmed on the basis that the amendment would be futile. Because we are unable to discern any other legitimate justification for the denial, we must reverse. Even though we affirm the grant of summary judgment on Ayers's remaining claims (s*ee* part IV.B., *infra*), we must remand for consideration of the claims Ayers wished to add by amendment.

### III.

As we explained above, Ayers sought leave to supplement the appendices to his brief in opposition to summary judgment to comply with rule 56(e). Such decisions are reviewed for abuse of discretion. *See Barker v. Norman,* 651 F.2d 1107, 1128-29 (5th Cir. Unit A July 1981). Specifically, it can constitute an abuse of discretion where a district court fails to afford a party the opportunity to remedy obvious defects in his summary judgment materials. *See id.*

Neither the defendants nor the district court challenged the authenticity of the documents in Ayers's appendices. As a result, if the district court's failure to allow Ayers to supplement the appendices constituted error, it was entirely harmless, and reversing would have no effect on the result.

### IV.

Ayers contends that it was error to grant summary judgment. He contends that genuine issues of material fact remain.

### A.

We review a summary judgment *de novo* and are bound by the same standards as those employed by the district court. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371 (5th Cir. 2002). Summary judgment is appropriate only where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-movant, 'show that there is no genuine issue as to any material fact.'" *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Once the moving party has demonstrated that the non-moving party has no evidence such that a reasonable jury could support a verdict in its favor, the non-moving party must put forth specific facts that demonstrate a genuine factual issue for trial. *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 135 (5th Cir. 2004).

### B.

Ayers alleges violations of his First Amendment rights by the denial of his ability to receive the challenged publications. Although prison inmates do not shed all of their constitutional protections by virtue of their confinement, such rights may be circumscribed to further legitimate penological objectives. Specifically, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Consequently, when reviewing a prison policy that restricts the flow of

publications to prisoners, we ask whether that policy is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989).

Defendants claim that the challenged materials were withheld pursuant to prison policy because they would create an increased danger of physical harm to prisoners and prison employees or contain material of a racially inflammatory manner that would encourage disruptions such as strikes or riots. To determine whether such a proffered justification is sufficient to withstand constitutional scrutiny, we ordinarily would engage in the four-factor analysis in *Turner v. Safley*, 482 U.S. 78, 89 (1987). Under *Turner*, however, restrictions on materials deemed likely to produce violence are permissible because they are rationally related to valid penological objectives. *See Chirceol v. Phillips,* 169 F.3d 313, 316-17 (1999). Included in the materials that can be rightfully excluded as tending to promote violence are those that promote racial or religious hatred. *See id.*

Furthermore, Ayers is not making a facial challenge to the policy; instead, he contends that the regulation has been unconstitutionally *applied* in his case because prison officials have denied him access to the materials he desires under the pretext that they promote violence and racial discord. Although the question of the facial constitutionality of such restrictions is one of law, the application of the restriction in individual cases necessarily involves questions of fact. *See Rooks v. Zavares*, No. Civ.A. 99-B-631, 2001 WL 34047959, *10 (D. Colo. Jan. 25, 2001). To defeat summary judgment, therefore, Ayers must demonstrate that a genuine issue of material fact remains for trial.

After reviewing the challenged material, the district court found, and we agree, that the publications were well within the realm of material that may be restricted because of their potential to cause violence. The portion of the June 1998 issue of the *Graterfriends Newsletter* that was withheld from Ayers contained racial epithets. According to prison officials' expert judgment, to which we are required to give great deference,[5] the presence of such material tends to encourage racial hatred and violence, so it is necessary to keep it out of the prison to maintain safety and discipline.

Similarly, the essay on slavery titled "How to keep a Black man down: From one White slave owner to another" discussed subjugating black slaves and even included a discussion of cross-breading "horses and niggers." There can be no doubt that the publication speaks for itself as to whether it contains material that could promote racial hatred and violence. The *N . . . Bible* is no less inflammatory. It uses the racial epithet of its title on nearly every page of the book; discusses killing to gratify sexual desires; blames whites for infecting Africans with syphilis; and categorizes Caucasians as the problem of the Black people.

These publications, coupled with the prison officials' expert judgment, represent such strong evidence that the publications can be constitutionally excluded that it is very unlikely that any amount of countervailing evidence could allow a reasonable fact-finder to conclude otherwise. Nevertheless, we examine the evidence submitted by Ayers to ascertain whether a sufficient quantum of evidence is present to demonstrate a genuine issue of material fact for trial.

---

[5] *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

The only evidence Ayers submits that could plausibly refute the evidence discussed above is the copies of other allegedly racially inflammatory materials that are present in the prison library. According to Ayers, the presence of these materials belies the prison officials' argument that the challenged publications have been excluded because of their racially antagonistic character, and consequently, he reasons, there is a genuine issue of material fact. These available materials include a passage from *I Know Why the Caged Bird Sings*, by Maya Angelou, that uses the same racial epithet that is replete in *The N . . . Bible*; and excerpts from *The Black Power Imperative* that discuss, *inter alia*, *Dred Scott v. Sandford*, 60 U.S. 393, 407 (1856) (stating that "[blacks] are beings of an inferior order . . .").

Ayers's attempt to demonstrate a genuine issue of material fact using these materials fails. The materials in question are wholly distinguishable from those he was denied. Comparing the use of a reviled racial epithet in *The N . . . Bible* with the book of a Pulitzer Prize and National Book Award nominee who is renowned for her civil rights work is like equating "chalk and cheese." *Blakeley v. Washington*, 542 U.S. ___, 142 S. Ct. 2531, 2537 n.5 (2004) (Scalia, J.). It is equally inapposite to compare the essay on slavery that Ayers seeks (a document reminiscent of the propagandistic and anti-Semitic *Protocols of the Elders of Zion*) with *Dred Scott*.

Although all of the aforementioned documents involve race relations, no rational trier of fact could deem them sufficiently similar as to undercut the defendants' judgment that the challenged publications are likely to foment racial violence. This conclusion is especially inevitable in light of the substantial deference we afford to the expert judgment of prison officials. *See O'Lone*, 482 U.S. at 349; *Oli-*

*ver*, 276 F.3d at 745.

The judgment is AFFIRMED in part, REVERSED in part; and REMANDED for consideration of the claims Ayers sought to bring in his second amended complaint.

7