# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30112

United States Court of Appeals
Fifth Circuit

**FILED**

December 27, 2016

Lyle W. Cayce
Clerk

BRAD DAWSON; CHARLENE DAWSON,

     Plaintiffs - Appellants

v.

ROCKTENN SERVICES, INCORPORATED; ROCKTENN CP, L.L.C.;
ROCKTENN COMPANY,

     Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:13-CV-3299

Before KING, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

     Plaintiff–Appellant Brad Dawson worked as a delivery truck driver and was injured while making a sulfuric acid delivery to a paper mill owned and operated by Defendants–Appellees. Dawson and his wife, Plaintiff–Appellant Charlene Dawson, sued Defendants–Appellees, asserting negligence. The magistrate judge, to whom this matter was referred by consent, granted

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30112

summary judgment in favor of Defendants–Appellees.  For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants–Appellees Rock-Tenn Services, Inc., Rock-Tenn CP, L.L.C., and Rock-Tenn Co. (collectively, Rock-Tenn) own and operate a paper mill in Hodge, Louisiana.  The mill requires large amounts of sulfuric acid, and Rock-Tenn contracted with Martin Transport to deliver sulfuric acid to the mill twice a day from a third-party.  Plaintiff–Appellant Brad Dawson has many years of experience delivering hazardous cargo and was hired by Martin Transport as a truck driver around February 2013.  In the months following his hire, Dawson delivered sulfuric acid to the mill at least daily, sometimes twice daily, without incident.

Under Rock-Tenn's operating procedures, the first step in the sulfuric acid delivery process entails the driver donning safety gear, including a hard hat, face shield, goggles, rubber gloves, rubber boots, and a full rubber suit. The driver next ensures that all hoses are "free from defects and void of other material."  If the hoses pass the driver's inspection, the driver connects one of the hoses—an air hose—to his tanker-trailer to build up pressure in the tank. The driver then connects another hose—the delivery hose—to the tanker-trailer.  Once the driver opens the valves on the tanker and the mill's vessel, the acid flows from the tanker into the mill's vessel through the delivery hose. Each offloading (involving roughly 2,800 to 3,000 gallons of acid) takes about an hour.

When the tanker-trailer is empty, a pressure gauge on the tanker reads zero, and the delivery hose begins to shake, indicating the offload is complete. The valves on the tanker and the mill's vessel are then closed, and a valve on a pressure-release line is opened to release any pressurized sulfuric acid

2

remaining in the delivery hose.[1]  Any remaining pressure in the delivery line is then bled into an underground, plant-wide drainage system roughly 30 to 40 feet from the tanker-trailer.  The process usually takes about 10 to 15 seconds. The drainage system is covered by a grate, which impedes the driver's ability to see whether any pressurized sulfuric acid has actually been bled from the delivery hose.

On June 5, 2013, Jerry Brown, a trainee employed by Martin Transport, accompanied Dawson on his sulfuric acid delivery to Rock-Tenn's mill.  Dawson and Brown made their first delivery to Rock-Tenn's mill without incident.  On their second delivery to the mill, after the tanker was empty and the valves on the tanker and the mill's vessel were closed, Dawson instructed Brown to open the valve on the pressure-release line. Brown opened the valve and gave Dawson a thumbs up after the valve had been turned.  Dawson then waited 30 seconds before releasing one of the locks connecting the delivery hose to the tanker-trailer.  As he did so, his safety shield was blown off, and he was sprayed with pressurized sulfuric acid on his face and head.  Brown ran to his assistance and used a nearby hose to wash Dawson.[2]  Dawson was rendered disabled as a result of his injuries.

Two days after the accident, Joe Williams, a Martin Transport employee, inspected the tanker-trailer involved in the accident and found glass in the tanker, possibly from a bottle used to sample the acid after loading, and a broken spring in an internal valve of the tanker.  After the inspection, Williams requested that a pressure gauge used to measure pressure inside the tank be replaced, probably because it "had a blurred sight glass," which made it

---

[1] The pressure-release line (and the delivery hose to which it connects) is owned and supplied by Rock-Tenn.

[2] Brown was apparently unable to get Dawson to the safety shower because Dawson and the shower were separated by a four or five foot tall construction fence.

difficult to see the internal needle's operation. In his deposition, Williams testified that the faulty spring in the internal valve would have had "[v]ery little" effect on the functionality of the internal valve, and a malfunctioning PSI gauge would only affect the driver's ability to tell when the tanker was void of pressure "some, [but] not a whole lot." He also testified that he did not believe that the glass or broken spring had anything to do with the accident.

Based largely, if not wholly, on Williams's inspection, Steven Nattin, a Martin Transport supervisor, prepared an incident investigation report dated June 10, 2013, and an on-the-job injury investigation report dated June 11, 2013. These reports concluded essentially the same thing as Williams's inspection: The "[t]railer internal valve had a broken spring & the trailer had a sample bottle in it. This resulted in the internal & external valve not being able to seal off completely, allowing pressure to build in hose after initial bleed off." Similarly to Williams, Nattin testified in his deposition that the internal valve would have operated even with the broken spring, but that he nonetheless identified the spring and bottle as the cause of the accident because "all [he] had to go on was [Martin Transport's] findings of the tank inspection."

Rock-Tenn also conducted an investigation of the accident, which consisted of "[b]asically going to the site and talking through [with the Martin Transport personnel present] what they had learned by talking to Mr. Dawson at the emergency room and [to Brown]." The investigation lasted a couple of hours and determined that the accident was caused by "a timing issue as far as opening or closing the vent whenever Mr. Dawson removed the hose from the truck." Rock-Tenn did not inspect the pressure-release line as part of its investigation.

In the weeks following the accident, Martin Transport continued to make daily sulfuric acid deliveries to the mill without incident. However, on June

27, 2013, Thomas Kelly, another Martin Transport driver, was involved in a similar accident. An investigation concluded that Kelly's accident was caused by a plugged pressure-release line, and the same day as Kelly's accident, Rock-Tenn issued a work order instructing that the pressure-release line be "unchoke[d] or change[d] out." The pressure-release line was subsequently replaced and discarded. At his deposition, Nattin testified that, in light of Kelly's accident, he believed Dawson's accident "had nothing to do on our [Martin Transport's] end."

On December 30, 2013, Dawson and his wife, Charlene (together, Plaintiffs), filed the instant suit, alleging Rock-Tenn's negligence caused their damages. The parties consented to trial before a magistrate judge. On May 13, 2015, Rock-Tenn filed a motion for complete summary judgment, which the magistrate judge granted.[3] The magistrate judge found that Plaintiffs had failed to show that Rock-Tenn "knew or should have known of any problem (assuming there was one) with the pressure release hose or valve," as required for liability by section 2317.1 of the Louisiana Civil Code.[4] The magistrate judge concluded that, in light of the fact that the deliveries occurred daily, sometimes twice daily, without incident for years before Dawson's June 5th accident, "[t]here is simply no evidence of any problems or warning signs prior to Dawson's accident" that would have provided Rock-Tenn with the requisite actual or constructive knowledge. The magistrate judge also found that the

---

[3] In that same order, the magistrate judge denied Plaintiffs' March 18, 2015, motion for partial summary judgment. This denial is not directly at issue in this appeal.

[4] Article 2317.1 provides as follows:

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

doctrine of *res ipsa loquitur* did not apply to the case because "Rock-Tenn did not have exclusive control over the offload system," as delivery drivers, such as Dawson, "had access to and used the offload system . . . multiple times per day," and "Rock-Tenn's negligence [wa]s not the only reasonable conclusion as to the cause of the accident." Following the denial of their motion for reconsideration, Plaintiffs timely appealed.

## II. STANDARD OF REVIEW

When, as here, the parties consent to a magistrate judge's disposition of a motion for summary judgment, we "review the [magistrate judge's] grant of summary judgment de novo, applying the same standard as the magistrate judge." *Henley v. Edlemon*, 297 F.3d 427, 429 (5th Cir. 2002). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We "construe[] 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

## III. SUMMARY JUDGMENT WAS PROPER

Plaintiffs assert that the magistrate judge committed several reversible errors in granting Rock-Tenn's motion for summary judgment. Specifically, they assert the magistrate judge erred in (1) concluding that Plaintiffs had not shown Rock–Tenn's constructive knowledge of a clog in the pressure-release line, as required by article 2317.1 of the Louisiana Civil Code; (2) declining to apply the doctrine of *res ipsa loquitur*; (3) refusing to allow them to supplement

their opposition to Rock-Tenn's motion; and (4) failing to address their "faulty design and procedure claim." We address each assertion in turn.

## A. Constructive Knowledge

Plaintiffs assert that Dawson's June 5th accident was caused by a clog in the pressure-release line. According to Plaintiffs, this clog constituted a defect within the meaning of article 2317.1 of the Louisiana Civil Code, and Rock-Tenn had constructive knowledge of that defect (*i.e.*, they should have known of its existence in the exercise of reasonable care). Specifically, Plaintiffs assert that, if Rock-Tenn had conducted reasonable inspection and maintenance of the pressure-release line, it would have discovered the alleged clog in the line. The magistrate judge, assuming the alleged clog in the pressure-release line constituted a defect, concluded that Plaintiffs failed to present any evidence that Rock-Tenn had constructive knowledge of that alleged defect. We agree with the magistrate judge.

The parties accept that article 2317.1 of the Louisiana Civil Code governs liability in this case. Accordingly, we begin our analysis with the text of article 2317.1, which provides, in pertinent part, that "[t]he owner or custodian of a thing is answerable for damage occasioned by its . . . defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the . . . defect which caused the damage." La. Civ. Code Ann. art. 2317.1. As the plain text of article 2317.1 makes clear, the question of whether a custodian or owner of a thing has constructive knowledge of a defect in that thing is inextricably linked with the exercise of reasonable care. *See Walters v. City of West Monroe*, 162 So. 3d 419, 424 (La. Ct. App. 2015).

Louisiana courts have traditionally analyzed the exercise of reasonable care as consisting of two separate components. *See Myers v. Dronet,* 801 So. 2d 1097, 1108 (La. Ct. App. 2001); *see also, e.g.*, *Kent v. Gulf States Utils. Co.*, 418 So. 2d 493, 497 (La. 1982). The first component requires the owner or

No. 16-30112

custodian to take reasonable steps to discover defects in the thing that create an unreasonable risk of harm. *See Myers*, 801 So.2d at 1108; *see also, e.g.*, *Kent*, 418 So. 2d at 497. The second component requires the owner or custodian to take reasonable steps to protect against injurious consequences resulting from defects in the thing that create an unreasonable risk of harm. *See Myers*, 801 So. 2d at 1108; *see also, e.g.*, *Kent*, 418 So.2d at 497.

When an owner or custodian of a thing fails to exercise reasonable care to discover a defect in that thing, Louisiana law imputes the owner or custodian with knowledge of the defect if the defect is of such a character or has existed for such a period of time that a reasonable custodian or owner would have discovered it. *See, e.g.*, *Dufrene v. Gautreau Family, LLC*, 980 So. 2d 68, 80 (La. Ct. App. 2008) (recognizing constructive knowledge requires party to discover "apparent" defects and those that have been shown to exist for "a long period of time"). The obligation that arises from this constructive knowledge is the same as that which arises from actual knowledge—the owner or custodian must take reasonable steps to protect against the injurious consequences resulting from the defect. *See Myers*, 801 So.2d at 1108; *see also, e.g.*, *Kent*, 418 So.2d at 497. Thus, an owner or custodian of a thing cannot avoid liability under article 2317.1 by merely claiming ignorance of the existence of a defect in that thing if, in the exercise of reasonable care, the defect should have been discovered. *See, e.g.*, *Crooks v. Sw. La. Hosp. Ass'n*, 97 So. 3d 671, 678–79 (La. Ct. App. 2012) (rendering judgment for plaintiff who demonstrated that, had the defendant "exercised reasonable care, i.e. inspect[ed] the sofa beds in use in its facility, it would have discovered the defect"). Conversely, an owner or custodian of a thing is not liable under article 2317.1 if the type of inspection that a reasonable owner or custodian would have undertaken under the circumstances would not have revealed the alleged defect in that thing. *See, e.g.*, *Bush v. XYZ Ins. Co.*, 880 So. 2d 953, 956 (La.

Ct. App. 2004) (finding defendant was not liable under article 2317.1 where defendant would have been required to hire a metallurgist to discover defect).

Here, Plaintiffs have failed to provide any evidence that Rock-Tenn failed to exercise reasonable care in its inspection and maintenance of the pressure-release line. Rock-Tenn was not the insurer of the pressure-release line, and its obligation to undertake further inspection and maintenance of the line depended on the existence of sufficient facts which would have caused a reasonable person to do so. *See, e.g., Monson v. Travelers Prop. & Cas. Ins. Co.*, 955 So. 2d 758, 761 (La. Ct. App. 2007) (recognizing article 2317.1 does not make an owner of a thing "the insurer of [its] safety"). Plaintiffs have not pointed this court (or the magistrate judge) to any facts which would have caused a reasonable person in Rock-Tenn's position to conduct further inspection or maintenance of the pressure-release line. Under Rock-Tenn's operating procedures, Martin Transport's drivers were required to, and apparently did, check that the pressure-release line was "free from defects and void of other materials" prior to each delivery.[5] Martin Transport's drivers delivered acid to the mill at least daily, often twice daily, without ever apparently notifying Rock-Tenn of any defect in the pressure-release line. In the absence of any countervailing evidence to suggest that a reasonable person in Rock-Tenn's position would have undertaken further inspection or maintenance of the pressure-release line, there is no basis for imputing Rock-Tenn with constructive knowledge of an alleged defect in that line.[6]

---

[5] Plaintiffs do not argue, much less cite any authority for the proposition, that Rock-Tenn's duty to maintain or inspect the pressure-release line was non-delegable.

[6] In apparent recognition of the absence of countervailing evidence, Plaintiffs argue that it would violate their due process rights to affirm the magistrate judge's grant of summary judgment on the basis that they have not produced sufficient summary judgment evidence on the issue of reasonable care because they were not provided any notice that issue was before the magistrate judge. This argument, however, is relegated to a single footnote and consequently has been waived. *See Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake*

No. 16-30112

Even assuming Plaintiffs had presented countervailing evidence to suggest that the exercise of reasonable care required Rock-Tenn to conduct further inspection and maintenance of the pressure-release line, Plaintiffs have failed to provide any evidence demonstrating that the alleged clog was of such a character or existed for such a period of time that it would have been detected by reasonable inspection and maintenance.  The pressure-release line was apparently unclogged hours prior to Dawson's June 5th accident and apparently unclogged hours after that accident, when deliveries were made to the mill without incident.  Moreover, Dawson was required to, and apparently did, check that the pressure-release line was "free from defects and void of other materials" immediately prior to his June 5th accident.  These facts suggest that, if a clog did, in fact, cause Dawson's accident, the clog developed in the course of mere minutes or hours.  Plaintiffs do not dispute this conclusion and offer no explanation—much less evidence—for how a reasonable inspection or maintenance routine would have detected such a transitory clog.  Indeed, Plaintiffs did not offer any evidence as to what a reasonable inspection or maintenance routine would have entailed.

After this matter was raised at oral argument, Plaintiffs filed a letter brief citing the deposition testimony of Rock-Tenn's expert, John Z. Wlascinski, as evidence that, had Rock-Tenn performed reasonable inspection and maintenance of the pressure-release line, Rock-Tenn would have discovered the alleged clog in the pressure-release line.  Yet that testimony was not cited

*Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ("Arguments subordinated in a footnote are 'insufficiently addressed in the body of the brief,' and thus are waived." (quoting *Bridas S.A.P.I.C. v. Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003))).  Regardless, Plaintiffs' argument is meritless.  As demonstrated *supra*, the issue of reasonable care and constructive knowledge are inextricably intertwined, and Rock-Tenn's motion for summary judgment put Plaintiffs on sufficient notice of the need to address the issue of reasonable care by expressly pointing out the absence of evidence that Rock-Tenn breached its duty to exercise reasonable care and by discussing article 2317.1's requirement of constructive knowledge.

No. 16-30112

in Plaintiffs' opposition to Rock-Tenn's motion for summary judgment. In fact, that testimony appears in the record as an appendix to an opposition to a motion in limine filed more than two months after Plaintiffs filed their opposition to Rock-Tenn's motion for summary judgment. Thus, it cannot furnish a basis for reversing the magistrate judge's grant of summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party who asserts that a fact is genuinely disputed to support the assertion by "citing to particular parts of materials in the record"); *see also, e.g.*, *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (holding that evidence that was not referred to in non-movant's opposition to summary judgment was not properly before the district court on summary judgment and would not be considered on appeal).[7]

In their brief, Plaintiffs discuss at length several cases which they assert illustrate the magistrate judge's error in granting summary judgment.[8] But

---

[7] Plaintiffs did cite Wlascinski's deposition testimony in their motion for reconsideration, and the magistrate judge appears to have considered his testimony before denying that motion. However, Plaintiffs do not separately address the denial of their motion for reconsideration in their brief. Accordingly, Plaintiffs have waived any argument that the denial of that motion was improper in light of Wlascinski's deposition testimony. *See* Fed. R. App. P. 28(a)(8)(A); *see also, e.g.*, *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 533 (5th Cir. 2013) (recognizing that a party waives an issue by failing "to meaningfully address it in its briefing"). Regardless, the outcome would be the same if Wlascinski's deposition testimony were considered. In his deposition, Wlascinski testified that Dawson's June 5th accident would *not* have been prevented by routine inspection and maintenance, but conceded that, if the accident was, in fact, caused by a clog in the pressure-release line, it *may* have been prevented by such inspection and maintenance. Because Wlascinski's deposition testimony was admittedly not based on "any studies, literature, learned treatises, [or] anything of that nature" and, in any event, did not take the possibility of detection of the alleged clog in the pressure-release line out of the realm of mere speculation, it could not defeat Rock-Tenn's motion for summary judgment. *See, e.g., Brown v. City of Hous.,* 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.")

[8] *See Matthews v. Red River Entm't of Shreveport, LLC*, No. 12-1188, 2013 WL 1932847 (W.D. La. May 8, 2013); *Robert v. Turner Specialty Servs., LLC,* 182 So. 3d 1069 (La. Ct. App. 2015); *Powell v. Chabanais Concrete Pumping, Inc.,* 82 So. 3d 548 (La. Ct. App. 2011).

11

those cases do not support Plaintiffs' position. Instead, they demonstrate the type of evidence Plaintiffs could have presented, but failed to present, to avoid summary judgment.[9]

## B. Res Ipsa Loquitur

The *res ipsa loquitur* doctrine "is a rule of circumstantial evidence that infers negligence on the part of defendants." *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 44 (La. 2006) (quoting *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So. 2d 654, 660 (La. 1989)). Three criteria must be satisfied to invoke the doctrine: "(1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff."

---

[9] Specifically, in *Powell*, the plaintiff demonstrated the defendant's constructive knowledge by presenting expert testimony that the defect in the thing at issue was a known wear item that would fail if not replaced and that the item's wear could have been confirmed by mere visual inspection. 82 So. 3d at 557–58. Here, Plaintiffs have not pointed this court (or the magistrate judge) to any evidence demonstrating that the alleged clog in the pressure-release line was caused by wear in the pressure-release line or that the alleged clog could have been detected by mere visual inspection. In fact, the record is devoid of any evidence regarding the age or lifespan of the pressure-release line at issue. Therefore, unlike *Powell,* there is no evidentiary basis to conclude that the pressure-release line warranted inspection and maintenance beyond that conducted by Martin Transport's drivers prior to delivery. In *Robert,* the plaintiffs demonstrated the defendant's constructive knowledge by presenting evidence that the defendant was requested to check its equipment (and apparently evidence that the defect in its equipment should have been found on inspection). 182 So. 3d at 1071, 1074–75. Here, Plaintiffs have not presented any evidence of complaints or issues with the pressure-release line prior to Dawson's June 5th accident (or, as demonstrated *supra*, that the alleged clog in the pressure-release line could have been found on inspection). Finally, in *Matthews*, the plaintiff demonstrated the defendant's constructive knowledge by introducing evidence that the defendant failed to conduct an inspection for the specific defect at issue in compliance with the manufacturer's recommendation. 2013 WL 1932847, at *2–5. Plaintiffs have offered no evidence that the manufacturer of the pressure-release line in this case (or, for that matter, any manufacturer of any pressure-release line) recommended inspection or maintenance, let alone inspection or maintenance beyond that provided by Martin Transport's drivers before delivery.

No. 16-30112

*Linnear v. CenterPoint Energy Entex/Reliant Energy*, 966 So. 2d 36, 44 (La. 2007); *see also* Restatement (Second) of Torts § 328D (Am. Law Inst. 1965) (recognizing the same three criteria for the application of the doctrine of *res ipsa loquitur*).

A plaintiff usually satisfies the *res ipsa loquitur* criteria by showing that the instrumentality that caused the plaintiff's injury, or all reasonably probable causes of the plaintiff's injury, were under the exclusive control of the defendant. *See Cangelosi,* 564 So. 2d at 666; *see also* Restatement (Second) of Torts § 328D cmt. g. However, such a showing is not necessary for the application of *res ipsa loquitur*. *See Cangelosi,* 564 So. 2d at 666; *see also* Restatement (Second) of Torts § 328D cmt. g. Instead, the essential question is "whether the probable cause [of the accident] is one which the defendant was under a duty to the plaintiff to anticipate or guard against." Restatement (Second) of Torts § 328D cmt. g; *see also Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1362 (La. 1992) (recognizing the doctrine of *res ipsa loquitur* applies when "the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part"). In the context of article 2317.1, this means that the doctrine of *res ipsa loquitur* cannot be used to infer negligence on the part of an owner or custodian of a thing where it is at least equally probable that the defect in that thing was not of such a character or had not existed for such a period of time to allow the owner or custodian to discover it in the exercise of reasonable care (*i.e.*, where the owner or custodian lacks constructive knowledge of the defect). *See, e.g.*, *Broussard v. Voorhies*, 970 So. 2d 1038, 1045 (La. Ct. App. 2007) (concluding that doctrine of *res ipsa loquitur* "did not apply to establish the required proof of constructive knowledge"); *see also* Restatement (Second) of Torts § 328D cmt. g, illus. 7.

Here, Plaintiffs have not demonstrated that all reasonably probable

13

causes of Dawson's June 5th accident were under Rock-Tenn's exclusive control.  Specifically, the evidence does not sufficiently eliminate either Dawson's or Brown's conduct as a cause of the June 5th accident.  Moreover, even if we agreed with Plaintiffs that the most probable cause of Dawson's June 5th accident was a clog in the pressure-release line, it is at least equally probable that the clog developed in so short a period of time before Dawson's accident that Rock-Tenn had no reasonable opportunity to discover and correct it.  As the magistrate judge appropriately recognized, "[t]here was evidence from which a reasonable person could find that there was miscommunication between Dawson and Brown, or that Brown did not properly open the valve, or that the line did become clogged but with no signs or advance warning that would render Rock-Tenn at fault."  The magistrate judge, therefore, correctly concluded that the doctrine of *res ipsa loquitur* could not be used to infer negligence on Rock-Tenn's part.

**C. Leave to Supplement**

Plaintiffs assert that the magistrate judge abused its discretion in denying them leave to supplement their opposition to Rock-Tenn's motion for summary judgment with the deposition of Rock-Tenn's expert, Wlascinski. Plaintiffs, however, never sought leave to supplement their opposition. Rather, they sought leave to supplement their *own* motion for partial summary judgment, and as discussed *supra*, filed Wlascinski's deposition transcript in connection with their opposition to a subsequent motion in limine.  Because Plaintiffs never sought leave to supplement their opposition (as they contend), the magistrate judge clearly acted within his discretion in not granting them leave.[10]

---

[10] Plaintiffs do not address whether the court can or should treat their request for leave to supplement their own motion for partial summary judgment as a request for leave to supplement their opposition to Rock-Tenn's motion for summary judgment.  Consequently,

## D. Faulty Design and Procedure Claim

Plaintiffs assert that, even if the magistrate judge's rulings on Plaintiffs' "[a]rticle 2317.1 claims and [their] *res ipsa loquitur* claims" were correct, the magistrate judge erred in failing to address Plaintiffs' "faulty design and procedure claim." That was a "freestanding claim," Plaintiffs assert, to which "the notice requirements of [a]rticle 2317.1 are not applicable." While conceding that their opposition to Rock-Tenn's motion for summary judgment did not address the "faulty design and procedure claim," Plaintiffs assert that they cannot be faulted for not doing so because Rock-Tenn did not seek summary judgment on that specific claim, as required by Federal Rule of Civil P. 56(a).

Rock-Tenn moved for complete summary judgment. Thus, contrary to Plaintiffs' argument, Rock-Tenn adequately identified "each claim" upon which it was seeking summary judgment (*i.e.*, the entire case). *See* Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendment (recognizing that the "each claim" language upon which Plaintiffs rely was added to make clear that *partial* summary judgment could be sought "as to a claim . . . or part of a claim"). Moreover, Plaintiffs' argument ignores the fact that their complaint asserted a single claim of negligence, and Rock-Tenn's motion for summary judgment addressed each of the alleged acts of negligence asserted in Plaintiffs' amended complaint. Consequently, Plaintiffs have failed to demonstrate any

---

the issue has been waived. *See* Fed. R. App. P. 28(a)(8)(A); *see also, e.g., Nat'l Bus. Forms & Printing*, 671 F.3d at 533. Regardless, any error in the magistrate judge's handling of Wlascinski's deposition was harmless. *See* Fed. R. Civ. P. 61; *see also Ayers v. Peterson*, 130 F. App'x 666, 669–70 (5th Cir. 2005) (concluding that any error in denying leave to supplement appendixes to opposition to motion for summary judgment was harmless). As discussed *supra*, Wlascinski's deposition testimony would not have precluded summary judgment, and therefore Plaintiffs' substantial rights were not affected by the magistrate judge's handling of that testimony. *See* Fed. R. Civ. P. 61; *Ayers*, 130 F. App'x at 669–70.

reason why their opposition did not articulate, as they were required to do, the manner in which their faulty design and procedure evidence supported their sole negligence claim. *See, e.g.*, *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (recognizing non-movant's duty to articulate the manner in which evidence supports their claim). The magistrate judge, therefore, did not err in failing to address Plaintiffs' "faulty design and procedure claim."[11]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the magistrate judge's grant of summary judgment in favor of Rock-Tenn.

---

[11] Although Plaintiffs do make reference in reply to the fact that they briefed their "faulty design and procedure claim" in their motion for partial summary judgment, Plaintiffs do not specifically address whether the argument and evidence provided in support of their motion for partial summary judgment can substitute for their opposition to Rock-Tenn's subsequent motion for summary judgment. Consequently, the issue has been waived. *See* Fed. R. App. P. 28(a)(8)(A); *see also, e.g.*, *Nat'l Bus. Forms & Printing*, 671 F.3d at 533.